[Civ. No. 2324.   Third Appellate District.—September 9, 1921.]

In the Matter of the Estate of CANDIDO BEFFA, Deceased. PACIFICA DOTTA, Appellant, v. TEODORA ROCCHI, Respondent.

[1] ESTATES OF DECEASED PERSONS — TESTAMENTARY CHARACTER OF INSTRUMENT—CONSTRUCTION.—In determining whether an instrument was intended to be testamentary its language will be construed in the light of the surrounding circumstances, and if it shall appear therefrom that such was the intention, the court will give effect thereto if it can be done consistently with the language of the instrument regardless of its form, the true test being not the testator's realization that it is a will, but his intention to create a revocable disposition to accrue and take effect only upon his death and passing no present interest.

[2] ASSIGNMENT—MEANING OF TERM.—An assignment is a transfer or setting over of property, or some right or interest therein, from one person to another, and the word is sufficiently comprehensive to include transfers of all kinds of property, but ordinarily it is limited in its application to the transfers of those things which are commonly designated choses in action, and to rights in or connected with property as distinguished from the particular item of property itself.

[3] ID. — USE OF WORDS "ASSIGN" AND "TRANSFER" — NATURE OF INSTRUMENT—RESORT TO SURROUNDING CIRCUMSTANCES.—While the words "assign" and "transfer" are sufficient to convey property by

deed or by will, they are not the usual operative words of either, and where used in an instrument which does not conclusively show whether the deceased intended it as a will or as a conveyance of a present interest, resort must be had to the circumstances under which it was made.

[4] ESTATES OF DECEASED PERSONS — INSTRUMENT EXECUTED BY SUICIDE—WILL.—An instrument wholly in the handwriting of the signer, reading as follows: "April 10th, 1920. I Candido Beffa I sign and transfer all my right and title of thi Deed of trust to Mrs. Teodora Rocchi is part payment of twenty years House keaping for me I also sign to her my house here in San Andrea my automobile a lot at leas Palmas and all wat will be realize of my share in the stock here in the store. Candido Beffa,"— is to be construed as a will, where the circumstances under which it was made show that it was executed after the signer determined to take his own life and that it was not delivered but placed where it would most certainly come into the possession of the person named therein after the signer's death, it being presumed that the deceased knew that without delivery the instrument would be ineffective as a deed but effective as a will.

APPEAL from an order of the Superior Court of Calaveras County admitting will to probate. J. A. Smith, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. H. Daly and Snyder & Snyder for Appellant.

Virgil M. Airola for Respondent.

FINCH, P. J.—This appeal is from a judgment and order admitting the instrument hereinafter set out to probate as the last will of Candido Beffa, deceased.

The appellant is a sister of the deceased and his sole heir at law. Her home is in the state of Missouri and she had not seen her brother for many years prior to his death, though they kept up a correspondence and he occasionally sent her money. The deceased was a native of Switzerland. He came to this country in 1899, at the age of seventeen years, and thereafter made his home with his aunt, Mrs. Teodora Rocchi, and her husband until the latter's death, they residing on a farm in Calaveras County. Upon the death of Mr. Rocchi, Beffa and his aunt took up their residence in San Andreas, where, in the language of the trial

judge, "they practically lived in the relationship of mother and son" until the death of Beffa, she being the house-keeper and he being employed by others for a time and later engaging in business for himself in partnership with one Louis Queirola. Queirola, shortly before Beffa's death, decided to withdraw from the partnership business and it seems to have been agreed that an effort would be made to sell the same. During the forenoon of April 11, 1920, the partners went over their business affairs with the purpose of ascertaining the extent of their assets and liabilities and were to meet again in the afternoon for the same purpose. Beffa failed to appear in the afternoon and his body was found the next day in the basement of a neighbor's barn. A coroner's jury found that his death was due to a gunshot wound self-inflicted, he having shot himself some time during the afternoon of the 11th.

After his death the instrument admitted to probate as his will was found in the partnership safe, in a sealed envelope, together with other papers belonging to Mrs. Rocchi. The instrument was pinned to the deed of trust referred to therein and on the face of the envelope was written: "Papers belong to Mrs. Teodora Rocchi." Mrs. Rocchi had no knowledge of the existence of the instrument prior to Beffa's death. It is wholly in the handwriting of the deceased and reads as follows:

"April 10th, 1920.

"I Candido Beffa I sign and trasfer all my right and title of thi Deed of trust to Mrs. Teodora Rocchi is part payment of twenty years House keaping for me I also sign to her my house here in San Andrea my automobile a lot at leas Palmas and all wat will be realize of my share in the stock here in the store.

"CANDIDO BEFFA."

[1] Appellant contends that the instrument is not testamentary in character. A will is a disposition of property to take effect at the death of the testator. "It is well settled in this country and in England, first, that in determining whether the instrument propounded was intended to be testamentary, reference will be had to the surrounding circumstances, and the language will be construed in the light of these circumstances. Second, that if it shall appear under all the circumstances that the instrument was

intended to be testamentary, the court will give effect to the intention, if it can be done consistently with the language of the instrument; and in such cases the particular form of the instrument is immaterial." (*Clarke* v. *Ransom,* 50 Cal. 600.) "A will may be informally drawn, and may consist of one or more papers. No particular words are necessary to show a testamentary intent. It must appear only that the maker intended by it to dispose of property after his death, and parol evidence as to the attending circumstances is admissible." (*Mitchell* v. *Donohue,* 100 Cal. 207, [38 Am. St. Rep. 279, 34 Pac. 615].) "It is undoubtedly the general rule enunciated by the leading case of *Habergham* v. *Vincent,* 2 Ves. Jr. 231, and oft repeated, that the true test of the character of an instrument is not the testator's realization that it is a *will,* but his intention to create a revocable disposition of his property to accrue and take effect only upon his death and passing no present interest." (*Nichols* v. *Emery,* 109 Cal. 329, [50 Am. St. Rep. 43, 41 Pac. 1091].)

[2] It is apparent, of course, that by "sign and transfer" the deceased meant "assign and transfer." They are the words usually employed to convey a present interest in property of the character of the deed of trust to which they are applied in the instrument. The instrument further provides, however, "I also sign to her my house here in San Andrea my automobile a lot at leas Palmas." The word "assign" is not the usual operative word to effect a conveyance of property of the character enumerated. "The words 'transfer' and 'assign' are not the usual operative words of a conveyance of real estate." (*Sanders* v. *Ransom,* 37 Fla. 457, [20 South. 530].) "An assignment in law is a transfer or setting over of property, or some right or interest therein, from one person to another. . . . The word is sufficiently comprehensive to include transfers of all kinds of property, but ordinarily it is limited in its application to the transfers of those things which are commonly designated choses in action, and to rights in or connected with property as distinguished from the particular item of property itself." (2 R. C. L. 593.) "In its original and technical sense it is held to refer to a transfer of an interest in land only. It is most frequently used, however, to describe the transfer of non-negotiable choses in

action.'' (5 C. J. 836.) ''The term assignment refers to a class of acts by which the right or title to something of value is transferred to another before the object of the transfer has become property in possession. The assignment of such property is considered in law as an authorization to the assignee to reduce it to his possession.'' (*Cross v. Sacramento Sav. Bank,* 66 Cal. 466, [6 Pac. 96].) The deceased had not attended the schools of this country and the instrument in question shows that he was not familiar with the use of the English language. It is evident that he did not use words in their strict technical sense. [3] While the words ''assign'' and ''transfer'' are sufficient to convey property by deed or by will, they are not the usual operative words of either. The language of the instrument in question does not show conclusively whether the deceased intended it as a will or as a conveyance of a present interest, and resort must be had to the circumstances under which it was made.

[4] It conclusively appears from the face of the instrument that the deceased intended that the property described therein should go to Mrs. Rocchi. He is presumed to have known the law. (*Estate of Young,* 123 Cal. 344, [55 Pac. 1011].) He is presumed to have known that without delivery the instrument would be ineffective as a deed but effective as a will. The court was justified in believing that the instrument was executed by the deceased after he had determined to take his own life. Under such circumstances, the fact that the instrument was not delivered but was placed where it would most certainly come into Mrs. Rocchi's possession after his death justifies the inference that the deceased intended it as a will rather than a deed. ''The nondelivery of a writing is a circumstance favoring it as a will.'' (*Nichols v. Chandler,* 55 Ga. 369.) The case of *Tozer v. Jackson,* 164 Pa. St. 373, [30 Atl. 400], is similar to the instant case. The will there under consideration was as follows:

''High James Rogers do give to John Jackson, Sr., my property known as 'Pen argyl Hotel' and the land adjoining, in Pen argyl, in Northampton county, P. A.

''JAMES ROGERS.''

The deceased shot himself in his room and, immediately after his death, the instrument was found on a trunk in

the same room, inclosed in an unsealed envelope indorsed "John Jackson." The court said: "It is manifest . . . that at the moment of the death of James Rogers the paper was in his possession, and that fact alone conclusively disproves the theory that he intended it to take effect in his lifetime. He had never delivered it. . . . The paper was exposed conspicuously, lying on top of the trunk, where it could readily be seen. . . . These circumstances are only consistent with the theory that, so far as the intention of the deceased was concerned, it was his purpose that the gift of the property should become effective after his death. In truth the undisputed facts entirely exclude any other inference. . . . It is impossible to conceive of a stronger or more convincing act of testamentary purpose and intent. There is of necessity no room for any other inference." (See, also, *Kisecker's Estate,* 190 Pa. St. 476, [42 Atl. 886].)

The judgment and order appealed from are affirmed.

Burnett, J., and Hart, J., concurred.