[Civ. No. 13501. First Dist., Div. Two. June 30, 1948.]

DANIEL SCANNELL, Respondent, v. HARRY K. WOLFF et al., Appellants.

John J. O'Toole, City Attorney, Bernard J. Ward, Jr., Deputy City Attorney, and Raymond D. Williamson for Appellants.

No appearance for Respondent.

GOODELL, J.—The respondent filed a petition for a writ of mandate to compel his reinstatement as a deputy sheriff, after his dismissal from that position.

The appellants filed a general demurrer. The order which overruled the demurrer directed a peremptory writ to issue. The judgment which was then entered directed "that any alleged order of the Civil Service Commission dismissing or denying the appeal or any alleged order of said commission affirming the dismissal of the petitioner be vacated; that the sheriff file proper charges, hold a full and complete hearing thereon with the right of petitioner to examine and cross-examine witnesses and to make such findings and order that is just and proper and supported by the evidence."

On this appeal no brief was filed on behalf of respondent and there was no appearance for him when the case was called for argument. This is not an implied criticism of respondent's former counsel, for he was no longer in the case.

█ This case was disposed of on the demurrer alone. In mandate cases there is no *statutory* provision for a demurrer to the petition although in practice demurrers are frequently used in mandate cases. Section 1094, Code of Civil Procedure, provides: "If no answer be made, the case must be heard on the papers of the applicant. If the answer raises only questions of law, . . . the court must proceed to hear or fix a day for hearing the argument of the case." It is clear from that section "that the answer may be used to raise questions of law as well as of fact" (*Scott* v. *Superior Court,* 83 Cal. App. 25, 30, 31 [256 P. 603]; *Loveland* v. *City of Oakland,* 69 Cal.App.2d 399, 403, 404 [159 P.2d 70]). █ Appellants point out that judgment was entered "without allowing appellants the right to answer," but they can make no point of that since section 1089, Code of Civil Procedure, gives them that right when it says that on the return day they "may answer the petition under oath." █ Moreover, the record does not show that appellants made any application to file an answer, either before or after their demurrer had been overruled. (See

*Private Investors* v. *Homestake Mining Co.,* 16 Cal.App.2d 1, 5 [60 P.2d 146].)

The proper and normal procedure would have been for appellants to have filed an answer incorporating a transcript of the hearing held by the sheriff and raising also the issues of law raised by their demurrer. The transcript of the sheriff's hearing was not incorporated in the petition for mandate, and there could be no complete record on which to present the case either in the superior court or here without it.

However, the appeal as it stands presents the single question whether the petition states a case in mandate, for in the absence of an answer the case had to be "heard on the papers of the applicant" (§ 1094, *supra*). Four grounds are set forth in the petition and if any one of them is sufficient, then of course the court's action should be sustained.

The facts which gave rise to respondent's dismissal are as follows: he was a jailer in San Francisco, and obtained from a judge of the superior court an order authorizing him to have the possession of a revolver which had been used in the commission of a crime, and confiscated. He turned over the revolver to a friend (not an officer) and while it was in the friend's possession it disappeared from his automobile, presumably by theft. In a holdup later on, this same revolver was dropped, and so it found its way back into the possession of the police. It was traced to the respondent, and when these facts were brought to the attention of the sheriff he filed written charges against his deputy, accusing him of insubordination, one of the grounds for dismissal specified by the charter. A hearing was held before the sheriff, at which respondent was represented by counsel, and the sheriff thereupon dismissed him. Respondent then appealed to the Civil Service Commission from the order of dismissal and a transcript of the proceedings before the sheriff was filed with the commission. The commission did not disturb the sheriff's order.

One of the principal grounds stated in the petition for the writ is that the sheriff was disqualified from sitting in judgment on respondent's case for the reason that he was prejudiced and biased, and the petition contains allegations of antecedent facts and circumstances (wholly unrelated to the revolver episode) out of which it was claimed "intense animosity" had been engendered by the sheriff against respondent. It is not necessary to recount these allegations for the petition states no case on this ground. Section 154 of the

San Francisco Charter provides that "The appointing officer shall publicly hear and determine the charges, and may exonerate, suspend or dismiss the accused." As the sheriff was the officer who necessarily had to hear and determine the charges, the case falls within the rule of *Caminetti* v. *Pacific Mutual Life Ins. Co.*, 22 Cal.2d 344, 366 [139 P.2d 908], where it is said, " 'There is an exception, based upon necessity, to the rule of disqualification of an administrative officer. An officer, otherwise disqualified, may still act, if his failure to act would necessarily result in a failure of justice' " (quoting 42 Am.Jur. p. 312).

Another point raised by respondent's petition is that the commission's action when it "ordered that this appeal be denied" was beyond its jurisdiction "since it was the duty of said Commission to hear such appeal." It did entertain the appeal. Obviously what the commission's language meant was not that it refused to entertain the appeal but that *respondent's application* for a reversal of the sheriff's decision was denied. There is no merit in this point.

This brings us to the proceedings on appeal before the commission. Section 154 of the charter reads: ". . . The civil service commission shall immediately be notified of the charges when made, of the hearing, and of the finding thereon. The finding of the appointing officer shall be final, unless within thirty days therefrom the dismissed employee appeals to the . . . commission. The appeal and all proceedings shall be in writing and shall briefly state the grounds therefor. *The . . . commission shall examine into the case and may require the appointing officer to furnish a record of the hearing and may require in writing any additional evidence it deems material, and may, thereupon, make such a decision as it deems just.* The order or decision of the commission upon such appeal shall be final and shall forthwith be enforced by the appointing officer . . ." (Emphasis added.)

During the pendency of the appeal the commission never fixed any time or place for a presentation of the matter. What it did was to send out three letters. One was sent to respondent, in which six questions were asked. These questions were answered, not by him but by his attorney. Another letter was sent to Judge Jacks, who had signed the order releasing the revolver, and a copy thereof was sent to respondent by the commission 19 days after it had been answered. A third letter was sent to the sheriff and a copy thereof was sent to respondent 21 days after it had been answered.

Before the letters were sent respondent was given no opportunity to object to them in any way and after they had been answered he was not invited to do or say anything as to the answers, or to make any counter showing.

The petition in mandate states that when respondent's appeal was filed "although it was expressly requested therein that the right to appear and to present oral argument at the time of hearing be granted, no such right was granted although no notice of denial was given." After alleging the sending of the letters it is stated: "That no opportunity was given petitioner to confront Judge Lile T. Jacks or respondent Daniel C. Murphy with respect to the statements contained in their reply letters . . . nor was any opportunity given to petitioner to appear personally and through his counsel and be heard as requested . . ." It is then alleged that the action of the "Commission in denying petitioner the right of hearing and of considering as evidence ex parte statements made out of his presence and without opportunity to confront the individuals making such statements is a denial of due process under both the state and federal constitution; . . ."

██ The appellants argue that the commission was bound to follow the procedure outlined by the charter, which they say "specifically sets forth how the appeal shall be heard . . ." The charter is anything but specific. It requires that the commission "shall examine into the case and may require the appointing officer to furnish a record of the hearing." Such record was furnished and was before them (but it was not before the superior court, and it is not before us). The charter provides, further, that the commission *"may require in writing any additional evidence it deems material . . ."* (Emphasis added.) The letters sent to the sheriff and to Judge Jacks show that the commission required "additional evidence." But while the "additional evidence" asked for and received was in writing, it was unsworn. If such evidence had been tendered at the sheriff's hearing it would have been rejected as no evidence at all (see Code Civ. Proc., §§ 1878, 2002; see, also, *People ex rel. Kasschau* v. *Police Commrs.,* 155 N.Y. 40 [49 N.E. 257]). It cannot be the law that "additional evidence" may be admitted on appeal when it could not have been admitted on the trial itself. Moreover, had such evidence been tendered at the sheriff's hearing the accused, who was there represented by counsel, would have had an opportunity to object to it, whereas before the commission he had no such opportunity, for there was no time or place

of hearing and he received the copies of the letters three weeks after they had been sent and almost that long after they had been answered.

In the letter to Judge Jacks he was asked the following questions and in his reply he gave the following answers:

"1. Did Scannell represent to you that he sought the pistol for use in the performance of his duties as a peace officer?" Answer: "Yes."

"2. Did you release the pistol to Scannell because of or by reason of the fact that he was a peace officer and for his use in the performance of his duties as a peace officer?" Answer: "Yes."

"3. Did Scannell represent to you in what manner the pistol was to be used in his work as a peace officer?" Answer: "In his official capacity as Deputy Sheriff."

"4. In your opinion, did the release of the pistol to Scannell as a peace officer by you impose upon Scannell the duty and obligation of safeguarding the custody of the pistol and restricting its use by Scannell solely in the performance of his duties as a peace officer?" Answer: "Yes."

"5. Would you have released the pistol to Scannell if he were not a peace officer?" Answer: "No."

In the letter to the sheriff he was asked the following questions and in his reply he gave the following answers:

"1. Upon its release to Scannell on order of Judge Jacks did the pistol, in your opinion, become the private personal property of Scannell with no restrictions as to its use and future disposition by him?" Answer: "No."

"2. If the pistol, in your opinion, was not the private personal property of Scannell to use and dispose of as he saw fit, was the pistol, in your opinion, the property of the Sheriff's office, or the Police Department, or the City and County of San Francisco?" Answer: "Ownership of the pistol did not change."

"3. Were you at the time the pistol was released to Scannell by order of Judge Jacks, or at any subsequent time, informed by Judge Jacks or did you discuss with Judge Jacks the circumstances leading up to the issuance of the court order? That is, were any reasons given for its issuance?"

To which he answered: "Judge Jacks stated that he has never issued a court order for the release of firearms except to an officer, and only to be used in line of duty."

"4. Were any representations reported to you as having been made by Scannell as to the reasons why he needed the pistol, its contemplated use, or as to any limitations or conditions attached to the delivery of the pistol, or understood by the Judge and/or Scannell even though not incorporated in the court order?" to which he answered: "Scannell never said anything to me about the pistol at any time."

"5. In your opinion was there any negligence or dereliction or evasion on the part of Scannell in his failure to report to you or to the Police Department that he had surrendered the pistol into the custody of Shea or that Shea had subsequently lost possession of the pistol?" To which he answered "Certainly there was negligence, dereliction and evasion on the part of Scannell."

Judge Jacks could have been a witness before the sheriff at his hearing, but with respect to the sheriff's letter and reply the anomalous situation is presented that the commission on the appeal acted on "additional evidence" furnished by a witness whose testimony, in the very nature of things, could never have been introduced at the hearing conducted by himself.

We are of course mindful of the fact that in proceedings before administrative officers or boards the same strictness is not called for or observed as in court proceedings. In the instant case, presented as it is on simply the appellants' opening brief, with no brief at all on behalf of the respondent, this court cannot be expected to lay down any rules with respect to the character, nature, degree or quality of the "additional evidence" which may be presented on an appeal under section 154 of the charter, or to say what the framers meant when they wrote into that section the requirement that the commission should "examine into the case." It does appear however that the commission apparently interpreted the charter provision to mean that as long as the "additional evidence" was *in writing* it need not necessarily be under oath. To this we cannot accede. It does not follow from the charter provision that the commission "may require in writing any additional evidence" that such evidence may be taken without the sanction of an oath or affirmation. Such a fundamental principle of our law as that requiring the testimony of witnesses to be given under oath should not be held to be taken away by mere implication. Evidence in writing is frequently given under oath, i. e., by deposition or affidavit,

and if the charter framers had intended to authorize the reception of unsworn evidence in writing we believe that they would have plainly said so. The case is presented only ''on the papers of the applicant (§ 1094, *supra*) which means on a general demurrer to the petition. Our function, therefore, is to decide whether in *any* of its allegations the petition is sufficient. ▮ The extent of our holding is that so far as the proceedings before the sheriff are concerned the petition does not state a case for a writ of mandate, but that so far as the proceedings on appeal to the commission are concerned, it does. In so holding we are influenced somewhat by the recent cases of *Steen* v. *Board of Civil Service Commissioners,* 26 Cal.2d 716 [160 P.2d 816], and *La Prade* v. *Department of Water & Power,* 27 Cal.2d 47 [162 P.2d 13]. Both of those cases involve section 112(a) of the Los Angeles Charter, under which (unlike the San Francisco Charter) the accused gets his hearing before the Civil Service Commission after written charges have been filed (but not tried) by the employee's department. The Steen case holds that the unsworn report of an investigator (appointed by the commission) which report the accused employee had no opportunity to meet, refute or rebut, is insufficient evidence on which to base a dismissal. While in the instant case and under the San Francisco Charter the accused employee had his hearing before the sheriff, the taking of ''additional evidence'' on appeal amounts, in substance and effect, to a partial continuation of the process commenced in the original hearing, and these unsworn statements of the judge and the sheriff are of no higher dignity as evidence than was the unsworn report in the Steen case.

▮ The respondent's remaining point is that he was accused of ''insubordination'' and that the facts do not prove such a case; further, that the order of dismissal adds ''incompetence'' as a ground of dismissal whereas that ground had not been specified in the accusation. The accusation dated November 8, 1945 addressed to respondent and signed by the sheriff was in the following language:

''As you know, I received a report from the Police Department about a revolver that was dropped by a hold-up man and recovered by the Police Department.

''In checking the details from the report of the Police Department I find that you had secured possession of this revolver on November 10, 1943, on a Court order.

"It seems that your action in loaning or disposing of this revolver constitutes insubordination, as provided in Section 154 of the Charter. Therefore, as a result of your action I hereby formally charge you with insubordination and set the date for hearing upon this charge, at Room 333 City Hall, on November 13, 1945, at 2 P. M."

Attached to this accusation (as would appear from the record) there was a copy of a police report giving the details and circumstances of the whole affair.

Section 154 of the charter provides that "No person employed under the civil service provisions of this charter, . . . in a position defined by the commission as 'permanent' shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense . . ."

The letter of November 8, 1945, and the police report attached to it fully informed respondent of the charges against him which is all the charter requires.

The fact that the letter from the sheriff to the commission reported that the dismissal was for insubordination *and incompetence* is, in our opinion, unimportant as long as the facts and circumstances on which the accusation was based were fully set forth. This part of the petition *was* vulnerable to demurrer.

As already remarked, the petition in mandate did not bring before the court the transcript of the proceedings before the sheriff on the trial. The only point raised by the petition in mandate, as far as the trial before the sheriff is concerned, is that he was disqualified. We have already held that he could not be disqualified, for the reasons stated. The part of the petition, and the only part, which states a case in mandate is that which sets out the proceedings before the commission on appeal. For this reason it appears that the judgment remanding the case to the sheriff went too far. The judgment should be modified so as to remand the case to the Civil Service Commission with directions to consider anew the appeal of the respondent as prescribed in section 154 of the San Francisco Charter and in such manner as is not inconsistent with the views herein expressed.

As so modified the judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.