[S. F. No. 18069. In Bank. Apr. 12, 1950.]

MERCHANTS SERVICE COMPANY (a Corporation), Respondent, v. THE SMALL CLAIMS COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

Fred N. Howser, Attorney General, Clarence A. Linn and B. Abbott Goldberg, Deputy Attorneys General, John J. O'Toole and Dion R. Holm, City Attorneys, and C. Wesley Davis, Deputy City Attorney, for Appellants.

John H. Brill for Respondent.

SPENCE, J.—Plaintiff petitioned the superior court for a writ of mandate to compel the clerk of the Small Claims Court in San Francisco to accept for filing therein a claim for $14.13. Defendants interposed a demurrer to the petition, thereby submitting the matter "on the papers of the applicant." (Code Civ. Proc., § 1094; *Scannell* v. *Wolff*, 86 Cal.App.2d 489, 491-492 [195 P.2d 536].) The demurrer was overruled and the court ordered a peremptory writ to issue. From the judgment accordingly entered, defendants appeal.

Plaintiff's claim was rejected by the clerk on the ground that it appeared to be based on an assignment. Section 117f of the Code of Civil Procedure provides that "No claim shall be filed or prosecuted in such small claims court by the assignee of such claim." An analysis of the two papers constituting plaintiff's claim—attached to the petition for a writ of mandate and designated Exhibits A and B—sustains the propriety of the clerk's action.

Exhibit A is on the form provided by the clerk for the use of claimants, consisting of a completed questionnaire and an affidavit and order as prescribed by section 117b of the Code of Civil Procedure. It thereby appears that Mrs. Wilma Bradford, defendant, is indebted to plaintiff, Merchants Service Company, in the sum of $14.13 for money due under a written contract; that a demand was made and refused and nothing paid; and the residence of defendant and the place of business of plaintiff are given.

Exhibit B is the "written contract" to which reference is made in Exhibit A. It consists of a printed form containing questions calling for information respecting the financial responsibility and resources of a prospective customer. Below

this form it appears that the subject of sale was a "ladies ring" for the price of $12.50 plus 38 cents sales tax and "Service and/or Excise Taxes" $1.25, total $14.13; and that the sale was on "Budget Account Terms $1.00 each week Beginning January 17, 1948." Printed on the reverse side is the purchaser's agreement, signed by Mrs. Bradford, acknowledging "receipt . . . of [the] merchandise . . . described . . ., for which payment is to be made to the Merchants Service Company, . . . called Creditor, in the sum there specified on the terms set forth." This agreement is reproduced in full below, omitting a form to be executed by cosigners or guarantors and which was not executed.[1]

Immediately following and as a part of the same printed document appears a formal statement signed by Sol Michaels,

---

[1] "The undersigned hereby acknowledges receipt from the concern named of merchandise and/or services described on reverse side, for which payment is to be made to the Merchants Service Company, hereinafter called Creditor, in the sum there specified on the terms set forth. Receipt of said merchandise in good order, satisfactory fit and construction in every detail is hereby acknowledged by the undersigned.

"If any representation herein made by the Undersigned is false or if the Undersigned defaults in any payment or violates any of the conditions of this agreement, the unpaid balance hereunder shall immediately become due at the option of the creditor.

"Should Creditor institute action to recover the purchase price or any part of it, the title and right of possession of any merchandise referred to shall remain in the Creditor until paid for, with the right of repossession before or after judgment rendered, until satisfaction of such judgment. The Undersigned agrees to return the merchandise purchased and referred to on demand should the Undersigned be in default in any payments or have made any material misstatement in connection herewith, and agrees to pay the Creditor a reasonable amount for any actual damage suffered thereby. Should this contract be placed in the hands of an attorney or collection agency for collection or breach of contract, the Undersigned agrees to pay all actual court costs, collection expense including collection agency fee and attorney fees incurred, with or without suit.

"The Undersigned agrees to make all payments under this contract at the office of the Merchants Service Company. In the event of default by Undersigned in any of the obligations herein, Creditor may, without notice of demand, enter any premises where said merchandise may be found and take possession thereof and at its option sell said merchandise at public or private sale, and the proceeds thereof, less the expense of repossessing and selling said merchandise, shall be credited upon the amount unpaid hereunder, or without such sale there may be credited upon the amount unpaid the fair market value of said merchandise at the time of such repossession, and in either event, in consideration of the use and depreciation of said merchandise, Undersigned agrees to pay forthwith any remaining unpaid balance hereunder. In no event shall Creditor be entitled to receive in excess of the original purchase price unless Creditor elects to reclaim the merchandise, in which event Undersigned shall be released from all further liability.

"The Undersigned hereby agrees that the period of the running of

showing him to "relinquish, disclaim, and quitclaim any right, title or interest in and to the merchandise or demands therein described unto Merchants Service Company" and to "guarantee" the validity of "the above contract." This agreement by Michaels is likewise reproduced in full below.[2]

the statute of limitations on the within account will be extended ten (10) years from date hereof.

"The undersigned agrees to insure said chattels against loss by fire, theft, damage and mysterious disappearance in favor of the Creditor or its assignee and furnish Creditor or its assignee with a copy of the insurance policy. Should the Undersigned fail to furnish the Creditor or its assignee with a copy of its insurance policy, the Creditor or its assignee may insure the above described chattels at the expense of the Undersigned and the Undersigned agrees to pay the premium on said policy within thirty (30) days after demand thereof.

"The Undersigned hereby waives all right for a change of venue and expressly consents to any suit for collection being filed in San Francisco. Time is of the essence of this agreement.

"This contract may be assigned or sold and all rights and conditions of the Creditor or assignor shall inure to the benefit of the purchaser or assignee.

Signed: Mrs. Wilma Bradford
Dated Jan 10, 1948 (Buyer)''

[2]"'We hereby relinquish, disclaim, and quitclaim any right, title, or interest in and to the merchandise or demands therein described unto Merchants Service Company. We guarantee that the above contract is a valid, bona fide and subsisting agreement; that all laws have been complied with; and that all signatures appearing thereon are genuine and are of the persons of whom they purport to be and that such persons are competent to make this contract. It is specifically represented that no part of this contract arose out of any delinquent account previously on our books; that all merchandise as set forth thereon as having been sold has been delivered to the Debtor; and/or that all services agreed to be performed have been rendered and completed to the personal satisfaction of the Debtor, after which I/we shall not be responsible for the payments on this contract. The debtor is not obligated to us or our assignee on prior purchases. Additional credit will not be granted to any Debtor until the balance on a prior contract has been paid in full or unless such additional credit has previously been approved by Merchants Service Company. Should we violate this provision Merchants Service Company may elect to require us and we hereby agree to pay to Merchants Service Company any balance due it from the Debtor on a prior contract or Merchants Service Company may elect to collect and retain the entire balance due from the Debtor including the amount due from the Debtor of such unauthorized sale. We agree to act as agent to collect the money due on this contract until notified to the contrary by Merchants Service Company, and we shall immediately remit same to Merchants Service Company, and prior to such remittance shall hold such collection and/or deposit same in a place of or account separate and distinct from collections and/or funds of our own, and such receipt and/or collections shall be and remain the property of said Merchants Service Company. Merchants Service Company by, or through its agent, shall have a right to examine my and/or our books of account at any reasonable time.

(Firm Name) Sol Michaels
915 Pierce St.''

■ From these "papers" it is apparent that Mrs. Bradford purchased a ring from the seller, Sol Michaels, and that she was obligated to make "payment" therefor "to the Merchants Service Company." Such transaction, plaintiff maintains, evidences a contract of sale for its express benefit (Civ. Code, § 1559; *Hartman Ranch Co.* v. *Associated Oil Co.*, 10 Cal.2d 232, 244 [73 P.2d 1163]), an original obligation in its favor (*J. F. Hall-Martin Co.* v. *Hughes*, 18 Cal.App. 513, 516 [123 P. 617]), which it, as the primary creditor of the purchaser, was trying to enforce directly in the court having jurisdiction of its claim as so limited in amount (Code Civ. Proc., § 117). But such argument gives effect only to part one of Exhibit B above quoted, the agreement signed by Mrs. Bradford and establishing a debtor-creditor relationship between her and plaintiff; and it disregards the purport of part two of Exhibit B above quoted, the relinquishment signed by Sol Michaels, the merchant, as a factor affecting the three-party undertaking and indicating the derivative basis of plaintiff's claim against the purchaser. A consideration of the two parts of the agreement together compels the conclusion that plaintiff's status is that of an assignee rather than that of the ordinary third party beneficiary, and that its claim is therefore not cognizable in the small claims court. (*Schwartz, Inc.* v. *Burnett Pharmacy*, 112 Cal.App. Supp. 781, 785 [295 P. 508].)

The writing signed by Michaels shows on its face that he was the original claimant against the purchaser by reason of his sale and delivery of the ring to her. It was only by reason of his relinquishment of his right to make a demand upon her for the purchase price that plaintiff's corresponding right against her arose, and so plaintiff was substituted for the normal creditor, the seller, in the transaction. Thus the writing executed by Michaels speaks in the past tense of "demands therein described" which are *relinquished* and *quit-claimed*, and it shows that the contract of sale had been consummated, for Michaels guaranteed that "the above contract (part one of Exhibit B, *supra*) *is* a valid, bona fide and *subsisting* agreement" (emphasis added), and that the merchandise sold had been delivered. The "demands therein described" constitute a chose in action, consisting of the right to receive from the buyer the deferred payments of the purchase price which became owing to the seller, Michaels, as soon as he delivered the ring. Such transfer of rights in connection

with property ordinarily indicates an assignment (4 Am.Jur. § 2, p. 229; *Estate of Beffa,* 54 Cal.App. 186, 189 [201 P. 616]; see, also, *Commercial Discount Co.* v. *Cowen,* 18 Cal.2d 610, 614 [116 P.2d 599]), and the studious avoidance of the word "assign" in the language of the relinquishment cannot affect its proper classification as an assignment. Moreover, Michaels' guarantees as to (1) the validity of the "subsisting" contract for payment of the purchase price and (2) the genuineness of "all signatures appearing thereon" are warranties that are typical of those which ordinarily accompany an assignment. (See 4 Am.Jur. § 100, pp. 308-309.)

While the writing signed by the purchaser (part one of Exhibit B, *supra*) shows a debtor-creditor relationship existing between her and Merchants Service Company, the same relationship must first have existed between her and the seller Michaels, for otherwise Michaels had no "demands" to relinquish. In short, the significant events in the three-party transaction clearly appear to have transpired in this sequence: (1) the purchaser's obligation to pay arose immediately upon delivery of the ring; (2) the ring had been delivered before Michaels signed the relinquishment; and (3) the debtor-creditor relationship between the purchaser and Merchants Service Company as evidenced in the writing over the buyer's signature (part one of Exhibit B, *supra*) came into being only because Michaels relinquished to the company the purchaser's obligation to pay him as seller of the ring. By signing the relinquishment, Michaels extinguished his right to sue for collection of the purchase price and this right was transferred to the company, so that it thereafter stood in the place of Michaels. While plaintiff urges that the purchaser's original promise of payment ran in its favor, creating a primary obligation which could not be affected by Michaels' undertaking, such argument necessarily involves treatment of the two parts of the agreement covering the sale of the ring (Exhibit B, *supra*) as separate writings, having no bearing one on the other. However, that view cannot prevail, for the "papers" constituting the record here show this to be one entire transaction, and the three-party dealings evidenced thereby must be construed as a whole and given a normal interpretation consistent with their purport. (Civ. Code, § 1641; 6 Cal.Jur. § 165, p. 258.) As the two parts of this single transaction are so related and integrated one with the other, plaintiff's right to sue on the claim in question appears clearly to have accrued only as the result of Michaels' assignment thereof upon con-

summating the sale and delivery of the ring to the purchaser.

Section 117f of the Code of Civil Procedure, *supra*, does not confine its prohibition, in use of the small claims court, to assignees for collection or assignees for the purposes of suit. Rather it prohibits the filing of a claim by any and every "assignee"; and as so used without limitation, the word suggests a broad meaning was intended to attach thereto and to include anyone who stands in the place of the original creditor. So here, any realistic appraisal of the substance of the three-party transaction (Civ. Code, § 3528) shows that Michaels by his "relinquishment" thereby made to Merchants Service Company a present assignment of his claim against the purchaser arising out of his sale and delivery of the ring to her, a type of transaction coming within the express terms of section 117f of the Code of Civil Procedure; and the clerk of the small claims court was therefore justified in refusing to file plaintiff's claim.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.