BRAT, P. J.
appeal from the order and judgment denying the petition for writ of mandate, entered after an order sustaining respondents’ demurrer to the petition without leave to amend.
Question Presented
Would the granting of a permit to petitioners to connect with respondents' main have violated section 4011.6, Health and Safety Code ?
Record
Petitioners sought a writ of mandate compelling respondents to furnish a water service connection to petitioners for the purpose of supplying water for domestic purposes to petitioners’ property in San Mateo County Waterworks District Number 3. Before the organization of the district in 1951 the water mains were the property of a mutual water system organized in 1928. The latter quitclaimed its property to the district when it was organized. In 1951 A. J. Harwood, a predecessor in interest of petitioners, laid a 1-inch main in front of the property connecting it to a 2-inch main of the district, which main was installed prior to 1948 about the same time a connection from the 1-inch main to the property adjoining that of petitioners was made. Ever since the district has been supplying water to that property. All other property in the neighborhood of that of petitioners and the adjoining property can be served, or is being served, by the district from 2-inch mains on other streets. When the district was formed bonds amounting to $25,000 were issued and sold. These bonds were a lien on all real property in the district, including that of petitioners. Taxes on their property paid by petitioners have been used to pay interest on the bonds and to amortize them. April 1, 1959, petitioners, in writing, demanded a water service connection at the 1-inch main and tendered the district $150, the established charge for a service connection. Petitioners proposed, at their own cost, to lay a %-ineh pipe from the main to their property. Their demand was refused. The trial court sustained without leave to amend respondents’ demurrer to petitioners’ amended petition on the ground that the granting of a permit to respondents to connect with the *598 district’s main would have violated section 4011.6 of the Health and Safety Code.

Section 4011.6, Health and Safety Code, Would Not Have Been Violated By Granting the Permit.

Section 4011 in effect required the district to obtain from the State Board of Health a permit to supply water for domestic purposes. Section 4011.6 provides: “No person shall modify, add to or change his distribution system for water for domestic purposes as authorized by a valid existing permit issued to him by said board unless he first files a petition so to do with said board and receives an amended permit as provided in this chapter authorizing such modification, addition or change in his distribution system as may be specified in such amended permit, or unless such modifications, additions or changes in said distribution system comply in all particulars with such of the mandatory requirements of the Water Works Standards as pertain to the quality of water supplied to consumers.”
The “Water Works Standards” referred to are defined by section 4010.5 of the Health and Safety Code. “ ‘Water Works Standards, ’ as used in this chapter, means the ‘Standards of Minimum Requirements for Safe Practice in the Production and Delivery of Water for Domestic Use’ adopted by the California Section of the American Water Works Association on October 29, 1948.”
The trial court held that the petitioners did not state a cause for relief because (1) it did not appear that the district had the amended permit to “modify, add to or change his distribution system . . . as authorized by a valid existing permit...” (actually it appeared that both the district and its predecessor had been operating the distribution system without any permit, let alone an “amended permit”), and (2) it appeared that under section 5.4112 of the Water Works Standards, 1-inch mains are not permitted.
It further appears that on June 10, 1959 (before petitioners filed their amended petition, a demurrer to their original petition having been sustained with leave to amend), the district received the permit required by section 4011. The permit was one to operate the system which had been operating without a permit and did not relate to petitioners ’ application to connect with the 1-inch line for water service.
It is doubtful if section 4011.6 requires the district to apply for an amended permit every time an application is made to it by a property owner for a connection. Adding a connection to *599 an already established line without extending a main hardly appears to “modify, add to or change” the distribution system. If the Legislature intended that a water district had to apply to the State Board of Health every time a customer wanted water service it would have said so. It would appear that the amended permit which section 4011.6 contemplated dealt with changes in the distribution system other than a direct connection to a new customer. However, assuming that respondents’ contention is correct that the language in that section dealing with an amended permit included mere connections as distinguished from mains, the section provides an alternative—the district must either obtain an amended permit or comply in such change with the mandatory requirements of the Water Works Standards. That portion of the Water Works Standards upon which the district relies provides: “ 1.2 For the purposes of these minimum requirements the use of the word shall indicates a mandatory requirement and the use of the word should indicates a recommendation for good water works practice. . . .
“5.411 The maximum length of run of each size of pipe should conform to existing requirements of proper local authority but in the absence of such locally promulgated requirements and in no case should the maximum run of pipe be greater than the following:
“5.4111 In unreinforced runs (deadends)
“None smaller than 2-inch in diameter” (Emphasis added)
It is obvious that section 5.411 does not refer to connections to mains but only to mains themselves. The district concedes that there is no requirement in the Standards that the connections from a main to the property line be a 2-inch line. The district takes the position that because of the recommendation in section 5.411 that the main not be smaller than 2 inches, it would be violating that section and section 4011.5, Health and Safety Code, if it permitted petitioners to connect to the presently maintained 1-ineh main. There are two very good answers to this contention. One is that neither deal with connections from mains to property lines and the second is that even for mains the recommendation of 2 inches is not a mandatory requirement. Section 4011.6 requires only that to “modify, add to or change” a distribution system (and as we have hereinbefore pointed out permitting a connection to supply water to property fronting on a main is doing neither of those), the district comply with the mandatory requirements of the Water Works Standards. While districts may no longer install *600 1-inch mains in their distribution systems, there is nothing in the statute or in the Standards which prohibits a district from maintaining already installed 1-inch mains or from permitting connections thereto.
The permit which the district obtained after the action of the court recommends that “a program be instituted to replace the present deficiently sized lines ...” and “[t]hat no new connections to the deficiently sized lines be permitted until these lines have been brought up to standards.” Certainly these recommendations are not mandatory and should not supply the district a reason for not permitting petitioners to connect with the present 1-inch main, particularly in view of the fact that, petitioners’ property and the adjoining property being the only properties that can be served by that main, it is doubtful that the district would in the near future replace that main with a 2-inch one. Thus, by arbitrarily refusing petitioners a connection the district would be practically confiscating petitioners’ property for residence property without domestic water service is well nigh valueless.
The amended petition states a cause of mandate and the demurrer thereto was improperly sustained.
The petition alleges that the district arbitrarily refused to furnish the water service connection and serve water to appellants. No answer was filed denying any of the allegations of the petition. We hold that the petition states a cause of mandate.
Section 1089, Code of Civil Procedure, states that on return of the alternative writ of mandate in the superior court the respondent “may answer the petition under oath, in the same manner as an answer to a complaint in a civil action.” Section 1094 provides: “If the answer raises only questions of law . . . the court must proceed to hear or fix a day for hearing the argument. ..."
(On an original proceeding to this court Rule 56. (c) provides that the respondent “may make a return, by demurrer, verified answer or both.”)
In Scannell v. Wolff, 86 Cal.App.2d 489 [195 P.2d 536], a proceeding in the superior court to compel by mandamus reinstatement of a deputy sheriff, the appellants filed a general demurrer. The superior court overruled it and ordered the peremptory writ to issue. On appeal the court said: “This case was disposed of on the demurrer alone. In mandate cases there is no statutory provision for a demurrer to the petition although in practice demurrers are frequently used in *601 mandate cases. Section 1094, Code of Civil Procedure, provides; ‘If no answer be made, the case must be heard on the papers of the applicant. If the answer raises only questions of law, . . . the court must proceed to hear or fix a day for hearing the argument of the case. ’ It is clear from that section ‘that the answer may be used to raise questions of law as well as of fact’ (Scott v. Superior Court, 83 Cal.App. 25, 30, 31 [256 P. 603]; Loveland v. City of Oakland, 69 Cal.App.2d 399, 403, 404 [159 P.2d 70]). Appellants point out that judgment was entered ‘without allowing appellants the right to answer, ’ but they can make no point of that since section 1089, Code of Civil Procedure, gives them that right when it says that on the return day they ‘may answer the petition under oath. ’ Moreover, the record does not show that appellants made any application to file an answer, either before or after their demurrer had been overruled. (See Private Investors v. Homestake Mining Co., 16 Cal.App.2d 1, 5 [60 P.2d 146].)” (Pp. 491, 492.)
In Merchants Service Co. v. Small Claims Court, 35 Cal.2d 109, 110 [216 P.2d 846], the court said, concerning a petition for writ of mandate filed in the superior court to compel the small claims court clerk to file a claim, “Defendants interposed a demurrer to the petition, thereby submitting the matter ‘on the papers of the applicant.’ ”
Private Investors v. Homestake Mining Co., supra, 16 Cal. App.2d 1, was an appeal from a judgment directing the issue of a writ of mandate to compel defendant to permit an inspection. The trial court had overruled a demurrer to the petition and then issued the peremptory writ. Appellants contended that the trial court erred in not permitting appellants to file an answer after overruling the demurrer. The court had refused to permit appellants to answer because the court understood that the rules of practice in mandamus did not permit a defendant to demur and subsequently answer if his demurrer was overruled. After saying, “We are inclined to believe that there is a distinction and that the better practice in interposing a demurrer in a mandamus proceeding in the trial court is to file an answer at the same time, provided the party desires to raise issues of fact in the event that the demurrer is overruled. In any event, the party demurring should at least apprise the trial court in some manner that the particular proceeding is different from the ordinary proceeding in mandamus in that the demurring party does not admit the facts for all purposes and that the demurring party *602 desires to raise issues of fact in the event that the issues, of law raised by his demurrer are determined adversely to his contentions.” (Pp. 4-5.)
The court said that it is in the discretion of the trial court in a mandamus proceeding to allow an answer to be filed after the overruling of the demurrer. However, no request to file an answer was made in that case, and the court said that appellants “made no showing at any time of any defense which they desired to urge or could have urged by way of answer to the petition.” (P. 5.) The court went on to say: “On this appeal, appellants have presented an exhaustive brief upon the subjects covered therein, but it is not suggested in said brief that appellants could and would have denied under oath any of the allegations of the petition or that they could and would have alleged any affirmative matter under oath which would have constituted a defense in the event that leave to answer had been given them. The entire brief is directed at an attempt to show error in the ruling upon the demurrer and error in failing to grant leave to amend. As above stated, the petition was sufficient and the demurrer was properly overruled. In the absence of any indication in the trial court or in this court that appellants were prepared to raise any issue of fact which would have constituted a defense, we are of the opinion that appellants have not met the burden of showing that the failure to grant leave to answer was in any way prejudicial. They are not therefore entitled to a reversal.” (P. 6.)
In our case, no request was made by the district in the court below but in their brief here they opposed appellants’ request that in the event .we reversed the trial court the latter be required to issue a peremptory writ, claiming that under Rule 2(e), superior court, it is within the discretion of the superior court to permit them to answer. Rule 2(e) deals with civil actions and gives the right to permit an answer after a demurrer is overruled. It does not apply to original proceedings.
Also, respondent states in its brief that it has three defenses to the petition. (1) That the 1-ineh main in the road is a private line and is not owned by the district; (2) that its permit prohibits it from making a connection to a water line which is substandard and the 1-inch line is substandard; and, (3) that the district “does not have sufficient funds for the purpose of enlarging the water lines of said respondent in *603 order to provide the water connection demanded by petitioners.”
In view of our decision, there is no validity in these defenses. As to (1), if the 1-inch main is privately owned such fact would not prevent the district from furnishing appellants with water if they can arrange with the owner for permission to connect to the line. As to (2), we hold herein that the permit does not require changing the 1-inch main into a larger one and that legally, the district can permit appellants to connect with the present main. As to (3), the district does not contend that it does not have funds to permit a connection with the present line, but only to permit enlargement of the main which we have held is not required. Moreover, appellants have offered to make the connection at no cost to the district.
Appellants’ land is being assessed for the maintenance and operation of the district. The district saw fit in the court below to stand upon an erroneous technical construction of the law. In its brief here it states no good reason why it should not furnish the water service connection and, therefore, no valid reason for permitting it to file an answer exists.
The order and judgment are reversed and the superior court is ordered to issue a peremptory writ of mandate to compel respondents to furnish the water service connection and water service petitioned for.
Tobriner, J., and Duniway, J., concurred.
The petitions of appellants and of respondents for a rehearing were denied May 9, 1960, and the opinion and judgment were modified to read as printed above. Respondents’ petition for a rehearing was denied May 31, 1960, and their petition for a hearing by the Supreme Court was denied July 6, 1960.