[Civ. No. 6954. Fourth Dist. May 29, 1963.]

SAN DIEGO FEDERATION OF TEACHERS, LOCAL 1278, AFL-CIO, et al., Plaintiffs and Appellants, v. BOARD OF EDUCATION OF THE CITY OF SAN DIEGO et al., Defendants and Respondents.

Gostin & Katz and Irwin Gostin for Plaintiffs and Appellants.

Henry A. Dietz, County Counsel, Donald L. Clark, Deputy County Counsel, Schall, Nielsen & Boudreau and W. J. Schall for Defendants and Respondents.

COUGHLIN, J.—This is a proceeding in mandamus to compel the Board of Education of the City of San Diego to increase the amount of salary payable to a group of teachers

included within a previously designated salary classification; was instituted on behalf of the teachers in question; and resulted in a judgment in favor of the board, from which the petitioners have taken the appeal at hand.

For salary purposes the board has classified its certificated teachers according to their academic training and creditable experience; has placed them in one of five classes; has identified each of these classes by one of the letters "A" through "E"; in its annual salary schedules has provided a salary range for each class; also has provided different salary steps within the salary range dependent upon years of creditable experience; and has identified each step by number, commencing with the numeral "1." In the salary schedule adopted for the school year 1960-1961, classification "E" included teachers having a doctor's degree or equivalent training, which was deemed to be 72 units of upper division or graduate work after a bachelor's degree, including a master's degree; carried an annual salary range of $6,000 to $9,400; contained 15 salary steps; and, under the classification and step rating designated "E-15" entitled a person so classified to an annual salary of $9,400, which was the highest salary then paid to certificated teachers.

The teachers on whose behalf the instant proceedings were instituted had been employed by the San Diego Unified School District for over 15 years. The Board of Education of the City of San Diego is the governing board of that district.

In the latter part of May 1961 each of the teachers in question had been notified in writing by the board that he had been elected to serve as a certificated employee of the San Diego City Schools with permanent classification for the school year beginning July 1, 1961, and ending June 30, 1962; that such employment would be subject to the provisions of law and the rules, regulations and salary schedule adopted by the board; and that, according to the record of his training and experience on file, his salary classification for the year 1961-1962 would be "E-15." On July 18, 1961, the board, at a regular meeting, adopted a salary schedule identified as "San Diego Unified School District Teachers' Schedule No. 30, 1961-1962," to become effective for pay purposes upon final enactment of the "School Assistance Act of 1961," and directed that until said schedule No. 30 should become effective that compensation should be paid "as provided by CURRENT

1960-1961 salary schedules and rules.'' The new schedule, i.e., ''Schedule No. 30, 1961-1962,'' as adopted at this time, appeared to provide for a ''Class E'' salary range of $6,350 to $10,000; with 15 salary step rates, and directed that the 15th step should be ''achieved by an earned doctorate only.'' Thereafter, at the same meeting, the ''earned doctorate'' provision which had been adopted was discussed further; a reconsideration thereof was urged; but no further action was taken in the premises. Two weeks later, on August 1, 1961, at a regular meeting, the board members continued their discussion respecting the ''earned doctorate'' provision; considered the desirability of an earned unit achievement level in approved courses higher than that prescribed for ''Class E'' membership, as an incentive to improved teacher qualifications; and, as an alternate to the provision for payment of the Step 15 ''Class E'' rate to those having an ''earned doctorate,'' adopted a regulation providing for the payment thereof to those who had 90 earned units or upper division courses approved by the district's salary committee. On August 15, 1961, the teachers on whose behalf the present proceedings were instituted received notices from the school district advising that they were in ''Class E'' at Step 15, and that their annual salary would be $9,400. This notification conformed to the provisions of the 1960-1961 salary schedule which then was in effect. The new salary schedule did not become effective until October 4, 1961. Thereafter the teachers in question received a letter on the subject which enclosed a copy of what purported to be the 1961-1962 salary schedule adopted by the board, which set forth in a vertical column identified at the top thereof by the term ''Step'' the numbers ''1'' to ''14,'' and opposite thereto five other vertical columns identified respectively by the terms ''Class A,'' ''Class B,'' ''Class C,'' ''Class D'' and ''Class E,'' which contained the rates of compensation payable for each step in each class. The column marked ''Class E'' was further identified by the following: ''72 Sem. Hrs. After date of Bacherlor's [*sic*] with Master's,'' then followed the salary schedule for the 14 steps, commencing with the figure $6,350 and ending with the figure $9,700; and below this, at the extreme bottom of the column, on a line not identified with any step number, appears the figure $10,000 with an asterisk. Below all of these columns was the following paragraph: ''*This salary attainable only with earned doctorate, or 90 semester hours of approved upper division or gradu-

ate work after date of the Bachelor's degree, with a Master's degree, and at least fourteen years of creditable experience." By way of further explanation the schedule in question also contained this paragraph:

"Class E
(Steps 1
through 14)
Master's degree with a total of 72 semester hours of approved upper division or graduate work after the date of Bachelor's Degree, or possession of an earned doctoral degree (Ph. D., Ed. D., or other earned degrees or equivalent academic status)."

The petitioner teachers do not have earned doctorates or 90 units of graduate work; therefore would be paid at the annual rate of $9,700 which was $300 more than the annual rate of compensation paid them pursuant to the schedule in force at the commencement of the 1961-1962 school year; claim that the $10,000 annual rate provided by the 1961-1962 schedule is Step 15 in "Class E," being the step and class which they previously had achieved; and contend that the action of the board in limiting their salary to the $9,700 rate identified as "Class E," Step 14, in the new schedule, was arbitrary and discriminatory, constituted a downgrading of their position without reason and, therefore, was unlawful.

█ Subject to designated minimum requirements, a city board of education is vested by statute with authority to fix the compensation to be paid to teachers (Ed. Code, §§ 13502, 13525), including those who have attained a permanent classification (*Kacsur* v. *Board of Trustees*, 18 Cal.2d 586 [116 P.2d 593]), and in the exercise of that authority may adopt a schedule increasing or decreasing the amount of compensation previously paid, providing (1) it is not arbitrary, discriminatory, or unreasonable; (2) any allowance therein based upon years of training and experience is uniform and subject to reasonable classification; and (3) it is adopted prior to the beginning of the school year (Ed. Code, § 13506; *Rible* v. *Hughes*, 24 Cal.2d 437, 444 [150 P.2d 455, 154 A.L.R. 137]; *Kacsur* v. *Board of Trustees, supra,* 18 Cal.2d 586, 591), except that a schedule increasing salaries may be adopted during the school year if the board has reserved the right to do so by an appropriate rule adopted prior to commencement thereof or by a provision in the contract of employment. (Ed. Code, § 13510.)

█ A classification of teachers for salary purposes based on training is not arbitrary, discriminatory, or unreasonable;

may form the basis for differences in salary payments to permanent teachers performing the same duties; does not violate the uniformity required in a schedule making allowances for years of training and service; and may be used in composing an acceptable salary schedule. (*Rible* v. *Hughes, supra,* 24 Cal.2d 437, 445; *Fry* v. *Board of Education,* 17 Cal. 2d 753, 757-758 [112 P.2d 229].)

Fundamentally, the issue in the instant case involves the amount of salary which the petitioner teachers, and others in like standing, are entitled to receive under the 1961-1962 contract of employment. Their salary schedule classification is of no consequence except as a mechanical means of identifying the amount of their salary. Their 1961-1962 contract fixed an annual salary in an amount identified in the 1960-1961 salary schedule as classification "E-15," i.e., $9,400. If the board had not adopted the new salary schedule, *viz.*, that designated "Schedule No. 30, 1961-1962," which did not become effective until October 1961, the petitioners would have no cause for complaint. Their salaries would have remained at $9,400 per annum. By adopting the new schedule the board increased their salaries to $9,700 per annum. In doing so the salary schedule classification identifying the amount of salary payable to them was changed from that previously used, *viz.*, "Class E," Step 15, to "Class E," Step 14. If the board had not provided for an additional step in "Class E" available to those with additional training and qualifications, the petitioners would have no cause for complaint as they would be receiving the highest salary paid to any teacher possessing "Class E" qualifications, *viz.*, a doctor's degree or 72 graduate units. If the new schedule had provided expressly for a sixth classification; had identified this classification by the letter "F"; had prescribed an earned doctorate or 90 graduate units, with 14 years of experience, as the training and service qualifications therefor; and had fixed the salary for those having these qualifications at $10,000 per annum, under the rules heretofore noted, the classifications so made would have been reasonable, and petitioners would have no legal right to complain because the board had added another classification to its salary schedule available to those having greater training qualifications than they possessed, which carried a higher salary than that payable to them. The salary schedule under attack, i.e., "Schedule No. 30, 1961-1962," in substance, actually created such a classification for the $10,000

salary bracket, even though in doing so the form of explanation previously used was not followed in that the schedule did not set forth a sixth column identified as ''Class F,'' Step 15, which was made available to those possessing the qualifications expressly identified thereon by the letter and number ''E-15.'' It is a fundamental principle of law that, in determining rights and obligations, substance prevails over form. (Civ. Code, § 3528; *Merchants Service Co.* v. *Small Claims Court*, 35 Cal. 2d 109, 115 [216 P.2d 846]; *Schisler* v. *Mitchell*, 174 Cal. App.2d 27, 29 [344 P.2d 61].) The new schedule adequately describes and provides for a new classification. The classification is reasonable and therefore complies with the uniformity requirements of the law. The petitioner teachers do not have an ''earned doctorate'' nor 90 graduate units and, therefore, do not come within the classification as defined.

Nevertheless, the teachers in question claim that the action of the board has ''downgraded'' their position because heretofore their 72 units of graduate work was considered the equivalent of an ''earned doctorate''; that in placing teachers with earned doctorate degrees, and those having 90 units of graduate work, in a classification entitled to a higher salary, the board has acted unreasonably, arbitrarily and discriminatorily; and that its action constitutes a rerating of their position under a policy previously adopted without fraud, error or mistake, contrary to the law in the premises as applied in *Aebli* v. *Board of Education*, 62 Cal.App.2d 706, 753, 758 [145 P.2d 601]. In contrast to the situation in the cited case, the instant board did not rerate and place the petitioner teachers in a different class than that in which they previously had been placed. The board policy relied upon by the teachers in the case at bar was to place in ''Class E'' those teachers who had doctor's degrees or 72 units of graduate work. Under that policy the board determined that although the petitioner teachers did not have doctor's degrees, they did have 72 units of graduate work and gave them a ''Class E'' rating. If the board, at its July or August meeting in 1962, had concluded that the petitioner teachers' graduate units, in their opinion, were not of the quality entitled to consideration for an ''E'' classification, or that 72 graduate units were not to be deemed the equivalent of an earned doctorate for an ''E'' class placement, and on that basis placed petitioner teachers in ''Class D,'' the situation would simulate that considered in the cited case, *viz, Aebli* v. *Board of Education, supra,* 62 Cal.App.2d

706.  However, the teachers in question were not placed in "Class D"; were not paid a "Class D" salary; and, thus, were not reduced in classification either directly or indirectly.

The fact that these teachers, under the 1960-1961 and prior salary schedules, were given the same rating as those who had "earned doctorates" for the purpose of placing them in "Class E" did not rate their qualifications as the equivalent of an "earned doctorate" for placement in a higher class available only to those possessing a doctor's degree or 90 graduate units.  Petitioners stress the fact that, in the 1960-61 schedule the qualifications for a "Class E" placement were described as "A doctor's degree or equivalent training, deemed to be: (a) 72 units of approved upper division or graduate work after the Bachelor's Degree including a Master's Degree"; contend that, because petitioner teachers have 72 graduate units, the board heretofore has rated their qualifications as equivalent to those of a teacher having a doctor's degree;[1] and claim that in adopting the new salary schedule the board declared that 72 graduate units are not the equivalent of a doctor's degree, and thereby reduced their classification rating.  It should be noted that the 1961-1962 salary schedule did not change the 1960-1961 or other previous salary schedule qualification requirements for a "Class E" rating. The 1961-1962 schedule still requires a doctor's degree or 72 graduate units for a "Class E" placement.  The 1961-1962 schedule requirement of an "earned doctorate" or 90 graduate units, and 14 years of "creditable experience" applies to a newly created classification identified as "E-15."  It also is worthy of note that under the prior salary schedules 72 graduate units did not constitute training equivalent to a doctor's degree but merely were "deemed" to be training equivalent to such a degree.  Accepting the language used in those schedules as declaratory of the board's action, it is apparent that

---

[1] The quoted language is taken from the board's answer to the petition. The petitioners alleged that: "The 1960-61 salary schedule provided that teachers would be placed in the highest salary classification (E-15) upon attainment of:

"1.  A PhD degree, or

"2.  A Master's degree with 72 units of upper division or graduate credit."

It will be noted that the latter description does not include the term "equivalent."

The 1961-1962 salary schedule or the minutes of the board's meetings considering the same, as they appear in the record before us, do not state the qualifications necessary to a "Class E" placement under the 1960-1961 and prior salary schedules.

the use of the term "equivalent" was not intended to indicate a determination that for all salary purposes a teacher who had 72 graduate units possessed the same qualifications as a teacher who had a doctor's degree. Petitioners' argument is based on a misconception of the board policy, expressed in the 1960-1961 and previous salary schedules, which was limited to a declaration that 72 graduate units were deemed to be the training equivalent of a doctor's degree only for the purpose of entitlement to a "Class E" rating, and not for all purposes. As heretofore indicated, this policy has not been changed. Pursuant thereto the board rated the petitioners as "Class E" teachers. This rating has not been reduced. Instead of downgrading the teachers who had 72 units, the board upgraded those having a doctor's degree. The obvious and expressed reason for requiring an "earned doctorate" or 90 graduate units as a prerequisite for the achievement of the $10,000 salary bracket was to encourage teachers to supplement their academic training and thus to increase the caliber of the teaching staff. The action taken was not arbitrary, discriminatory or unreasonable.

The judgment is affirmed.

Griffin, P. J., and Brown, (G.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 24, 1963.