[Civ. No. 15404. Second Dist., Div. One. Feb. 4, 1947.]

HENRY W. ENGLISH, Appellant, v. CITY OF LONG BEACH et al., Respondents.

Kenneth Sperry for Appellant.

Irving M. Smith, City Attorney, Nowland M. Reid, Assistant City Attorney and Clifford E. Hayes, Deputy City Attorney, for Respondents.

DORAN, J.—This is an appeal from a judgment in favor of respondents in a mandamus proceeding brought by appellant for the purpose of compelling the respondent city, its administrative officials and civil service board, to permit appellant to resume duties as a ''patrolman'' in the police department, after an authorized leave of absence, and to compel the payment of appellant's salary. The principal issues involved herein have to do with the legality and effect of certain rules adopted by the civil service board under which appellant was required to take and pass a physical examination as a prerequisite to the resumption of duties.

The appellant was duly appointed to the position of patrolman on July 16, 1942. On December 24, 1944, appellant was absent from duty on authorized sick leave which continued until January 9, 1945, at which time the patrolman was permitted to take a vacation until January 23, 1945. On the latter date Patrolman English was granted a six months' leave of absence with the approval of the city council, such leave expiring on July 22, 1945. Previous to expiration of this leave of absence, and on July 16, 1945, appellant reported for duty and filed with the city health officer a certificate of an attending physician pursuant to section 70.80 of the Sick Leave Ordinance, to the effect that ''Mr. English was sufficiently restored to health so as to be able to efficiently perform the duties of his position, namely, that of a patrolman in the police department.'' Captain Otto Faulkner, in charge of police personnel, testified that appellant was not permitted to resume the duties as patrolman because ''At the time he reported I was advised by the Civil Service Commission that he had been absent longer than six months and would have to take a medical examination, and the doctor refused him to return because of an ailment.'' The ailment in question was specified as ''Valvular Heart Disease.'' On

August 3, 1945, appellant filed a petition for peremptory writ of mandate seeking the right to resume employment, and on the same day the city manager filed with the civil service board, charges against appellant upon the ground that the patrolman had failed to pass the physical examination, and upon the further ground that the medical examinations "indicate that you have contracted a physical ailment or defect, which incapacitates you for the proper performance of the duties of your position, . . . ." The notice of appellant's dismissal upon such charges further specified that the matter might be appealed to the civil service board within five days, in accordance with the provisions of section 4, rule XIV of the rules and regulations of the civil service board.

The trial court found that appellant was not entitled to a peremptory writ of mandate, and that since appellant's entire absence from duty from December 25, 1944 to July 16, 1945 amounted to more than six months, section 13 of rule V of the rules and regulations of the civil service board was applicable. Section 13 provided that "If an employee in the classified service has been absent from duty *for any reason* for a period of six (6) months or more, he shall be required to submit to and pass the physical examination as provided in section 12 of this rule, before he shall be eligible or entitled to return to active duty. . . . Failure to pass such examination shall constitute grounds upon which such employee may be either temporarily suspended or permanently dismissed. . . ." (Italics added.)

Appellant first contends that "The provisions of Sections 12 and 13 of Rule V were not intended to apply to petitioner (appellant)," and that rule IX containing special requirements for *applicants* for the position of patrolman, and requiring such applicants to pass a physical examination before appointment, "should be construed as an exception to the provisions of Rule V." In this connection it is urged that "a general provision is controlled by one that is special, the latter being treated as an exception to the former"; further, that confusion would result from an attempt to apply section 13 of rule V requiring an examination after six months' absence. However, a reading of the above rules discloses no inconsistency nor any reason for confusion; nor does the phraseology indicate any intention to make the police department an exception to the rule requiring a physical

examination. The fact that applicants for appointment to the position of patrolman are required to pass strict physical examinations has no bearing upon the present issue.

■ What may be denominated as appellant's principal contention is stated as follows: "Sections 12 and 13 of Rule V are invalid in so far as they purport to require a re-examination of a patrolman as a condition precedent to his return to duty during or after an authorized leave of absence." It is insisted that the civil service board was without power to adopt such a rule due to the fact that the board is one of limited power, and that under the city charter "The only rule making power . . . particularly with respect to regulating the Police Department, relates only to prescribing the physical fitness of police officers at the time of their original appointment." The rule-making power of the board is prescribed by section 102 of the city charter as follows: "The Civil Service Board, subject to the approval of the City Council, shall adopt, amend and enforce a code of rules and regulations, providing for *appointment and employments* in all positions in the classified service, based on merit, efficiency, character and industry, which shall have the force and effect of law." (Italics added.) Appellant contends that the italicized phrase "appointment and employments" is not broad enough to cover the disputed rule requiring all employees to pass a physical examination after a six months' absence. The respondent affirms, however, that the word "employments" is not synonymous with "appointment," and "was used in its broader sense and was intended to cover the relationship between the City of Long Beach and its employees"; further, that if any doubt existed in reference thereto, contemporaneous construction indicates that the word "employments" was given the broader interpretation.

Although dictionary definitions of the term "employment" are not particularly helpful in the present controversy, it seems clear that the word may be properly accorded a broad and liberal interpretation. The Cyclopedic Law Dictionary defines employment as "A business or vocation, . . . calling; office; service; commission, trade; profession. . . . The service of another. . . . the act of employing, *in another sense, the state of being employed.*" (Italics added.) In 20 Corpus Juris, page 1245, the following appears, "The word is not of the technical language of the law, or of any science or pursuit, and must be construed according to the context and

approved usage of the language. It has been variously defined as the act of attending to the duties and services of another; . . . the act of employing or using; *agency or service for another or for the public; . . . the state of being employed."* (Italics added.) In the present case the respondent's interpretation of the word seems the more reasonable. The curtailment of the rule-making power in the manner contended for by appellant, appears to be an unwarranted construction of the charter. There is nothing in the cases cited, by way of contemporaneous construction, or otherwise, which would justify a holding that the rule-making power in question should be given a rigid, highly technical interpretation inimical to a proper administration of the police department, and to the public interest. As said in the respondent's brief, "Certainly the framers of the Charter did not intend that the Police Department be composed of men physically unqualified to perform the duties required of *its* members."

Appellant insists that the rule in question is inconsistent with other rules, and calls attention to the provisions of rule XVI, section 3, that "At the expiration of a leave of absence the employee shall report for duty and shall thereupon be returned to the position filled by him when such leave was granted; *the employee shall have the right at any time within the period of leave to return to work."* (Appellant's italics.) It is sufficient answer to this contention to say that the employee's right to return to work is not an unqualified one, and the Civil Service Rules and Regulations must be read and considered in their entirety and not a single phrase considered by itself. Nor does the rule requiring a physical examination "automatically" disqualify the appellant from resuming employment; on the contrary the right of appeal to the civil service board fully protects the appellant's rights, and the trial court found "that under the provisions of Sec. 106 of the Charter of the City of Long Beach the petitioner is entitled to a hearing before the Civil Service Board." It is to be further noted that the judgment merely denied appellant's petition for a peremptory writ of mandate "without prejudice" to the petitioner to file another petition subsequent to a hearing before the civil service board.

None of the cases cited are directly helpful in the present controversy; .such cases either deal with generalities about which there is no disagreement, or the factual situation is

dissimilar to that in the instant case. The case of *Lotts* v. *Board of Park Commissioners*, 13 Cal.App.2d 625 [57 P.2d 215], cited by appellant as presenting an analogous situation, involved a petition to compel the board to reinstate petitioners to full time positions where the city council had adopted an ordinance permitting the creation of "half time positions." Mandamus was there held a proper remedy where petitioners had been arbitrarily displaced without conformity with charter provisions governing removal. The Lotts case bears no resemblance to the present situation and is not authority for appellant's contentions. No arbitrary discharge or displacement occurred in respect to appellant's position; nor was there any disregard of relevant charter provisions.

It is further argued that, in any event, appellant had not been "absent from duty" more than six months prior to July 16, 1945, at which time he actually reported for duty. The theory of this contention is that neither appellant's sick leave nor the vacation absence which preceded the final six months' leave of absence, can rightfully be considered as absence from duty requiring appellant to submit to the physical examination specified in section 13 of rule V. It appears from paragraph VI of the findings of fact that appellant was entitled to be "carried on the payroll of said department for the period . . . between December 24, 1944 and January 23, 1945" by reason of sick leave and regular vacation. In this connection attention is called to civil service rule X relating to promotions, defining "active service" as the time "during which the employee is carried on the payroll in the position from which promotion is sought." Obviously this section, dealing only with promotions, cannot be extended to cover the present situation.

■ It is further submitted that under Police Directive No. 7.33, all members of the department are placed on active duty in the event of an emergency whether on vacation or not; hence that appellant's vacation period was not technically "absence from duty." Appellant also complains that the trial court erred in excluding this police directive from evidence. Captain Faulkner of the police department had testified in respect to the directive, and as mentioned in respondent's brief, there was no showing that appellant would have been physically able to comply with such directive had he been required to report for duty in an emergency. No error is here apparent. ■ The same may be said in respect

to appellant's assignment that the trial court erred in rejecting evidence to the effect that Captain Faulkner had advised Patrolman English that the latter could return at any time within the six months' leave of absence without taking a physical examination. Neither on the theory of establishing an estoppel upon the part of the city, nor to show an alleged contemporaneous construction of the rules, was this evidence admissible. It cannot be seriously contended that Captain Faulkner's statements could change the explicit provisions of the rule; nor should such statements be considered either as effecting an estoppel, or as establishing contemporaneous construction of a provision which, by reason of its clarity, needed no construction.

■ Unfortunately for appellant's contentions, the terminology of section 13, rule V is precise and comprehensive. This rule requires that "If an employee in the classified service has been absent from duty *for any reason* for a period of six (6) months or more, he shall be required to submit to and pass the physical examination." (Italics added.) Such provision makes no exception in cases involving sick leave, vacation, or otherwise; obviously no such qualification can be read into the rule. Appellant's entire, continuous absence from duty was from December 24, 1944, until July 16, 1945,—"a period of six months or more," and the italicized words "for any reason" must be held to bring appellant within purview of the rule requiring the taking of a physical examination. The appellant's arguments to the contrary are not persuasive.

In view of the fact that the appellant patrolman reported for duty on July 16, 1945, and that no written charges of any kind were served upon appellant until August 3, 1945, and after the filing of appellant's petition for a writ of mandate, the appellant is entitled to receive compensation from the city of Long Beach during said period. The judgment of the trial court is therefore modified to direct that the respondent city shall forthwith pay the appellant's salary during the period from July 16, 1945, to August 3, 1945, and as so modified the judgment is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied February 24, 1947, and the opinion and judgment were modified to read as above.