[L. A. No. 22656. In Bank. July 7, 1953.]

HELEN C. THOMPSON, Appellant, v. CITY OF LONG BEACH et al., Respondents.

236

Kenneth Sperry for Appellant.

Irving M. Smith, City Attorney, Clifford E. Hayes and John R. Nimocks, Deputy City Attorneys, for Respondents.

SPENCE, J.—This is an appeal from a judgment in favor of respondents in a mandamus proceeding brought by appellant to compel respondents to permit appellant to resume her duties as a stenographer in the classified civil service of the respondent city, to revoke an order discharging her from the service, and to pay her salary claims. Appellant challenges the sufficiency of the evidence to sustain the trial court's determination that she is not entitled to the relief sought, but she cannot prevail in the light of the record.

Appellant worked for the civil service board as a stenographer from 1929 until August, 1947, when she was granted a leave of absence because of an impairment of her vision. One year later, August, 1948, she was given an indefinite suspension. In March, 1949, she had an operation for the removal of a cataract from her right eye, and thereafter she wore corrective glasses. On September 6, 1949, the board terminated the suspension and ordered her to report for a physical examination as required of all employees by rule of the board following a leave of absence of six months or more. The rule provides that failure to pass the examination shall constitute ground for suspension or dismissal. (Rule V, § 13). The examination was made on September 8, 1949. According to the report of the examining physicians, appellant's general physical condition was normal but because of particular visual defects she was declared "not employable at present." On September 15, 1949, the board by resolution approved the medical report and denied appellant reemployment.

On May 15, 1950, a notice of discharge was served on appellant. Following appellant's objection to the sufficiency of the charges and on June 1, 1950, an amended notice was served on appellant and filed with the board (rule XIV, §§ 2-5) stating: "That the medical examination given you by the Board of Physicians of the City of Long Beach on the 8th day of September, 1949, establishes that you have contracted a physical ailment or defect which incapacitates you for the proper performance of the duties of your position, namely, practically no vision in the right eye but this is corrected through use of lenses and no vision in the left eye due to immature cataract . . .; that during a period in excess of two and one-half (2½) years your vision has not been restored to the extent that you are able to perform the duties of Stenographer . . .;" and that within five days she could file an answer with the board. (Rule XIV, § 6.) Ap-

pellant duly filed an answer denying that she failed to pass a physical examination based on her ability to perform the duties of a stenographer, and denying that she had contracted any physical ailment or defect.

On June 29, 1950, the board held a hearing at which appellant and her counsel were present, and evidence was taken. Thereafter, by agreement with appellant, an eye specialist was appointed to examine her, and at a second hearing on September 5, 1950, his report and that of an assistant health officer for the city were considered. Neither appellant nor her counsel was present at this latter hearing, which concluded with the board's adoption of a resolution sustaining the charges filed against appellant and removing her from her employment. On January 29, 1951, after the alternative writ of mandamus was issued in this proceeding, the board vacated its order of dismissal of September 5, 1950, and restored the matter to the calendar for further hearing. (See *English* v. *City of Long Beach*, 35 Cal.2d 155, 160 [217 P.2d 22, 18 A.L.R.2d 547].) Following notice to appellant and her counsel and two continuances, at which neither appeared, the board on February 28, 1951, again sustained the charges dismissing appellant as a stenographer.

At the trial the record before the board was received in evidence; appellant and other witnesses testified without objection; and pertinent rules of the board as above cited were introduced in evidence. The trial court found that appellant was not, after September 7, 1949, ready, able and willing to perform the duties of a stenographer in the classified service of the city; that she was accorded a full, fair and complete hearing upon the charges of dismissal; and that there was substantial evidence offered and received to support the findings of the board. These findings are not open to successful challenge by appellant.

Preliminarily, appellant questions the authority of the board to proceed with the hearing because its chairman, rather than the city manager, preferred the charges against her. There is no merit to this objection. Under the city charter, the power to suspend or dismiss a person in the classified civil service appears to be vested in either the head of the department *or* the city manager (§ 107), and any qualified elector may file written charges (§ 106, see Stats. 1923, p. 1628).

Appellant was not entitled to a trial de novo in the superior court but only to a review of the full proceedings

before the local board acting as a quasi-judicial body empowered ''to make final adjudications of fact in connection with matters properly submitted to it.'' (*English* v. *City of Long Beach, supra,* 35 Cal. 2d 155, 158.) Upon such review the ''court does not have a right to judge of the intrinsic value of evidence nor to weigh it'' but its ''power . . . is confined to determining whether there was substantial evidence before the board to support its findings.'' (*Odden* v. *County Foresters etc. Board,* 108 Cal.App.2d 48, 49 [238 P.2d 23] ; see, also, Code Civ. Proc., § 1094.5, subdivision (c) ; *Bank of America* v. *Mundo,* 37 Cal.2d 1, 5 [229 P.2d 345].) No question is raised here as to the validity of the board's rule requiring an employee to take and pass a physical examination before resuming work after an extended absence, and providing that failure to pass the examination shall constitute grounds for suspension or dismissal. (*English* v. *City of Long Beach,* 77 Cal.App.2d 894, 901 [176 P.2d 940].) But appellant does question the evidentiary basis for the board's determination that appellant was not physically qualified to resume her stenographic duties and was so justifiably dismissed from the city's service.

All the doctors who testified or whose reports were read in evidence before the board either in behalf of appellant or respondents were in substantial agreement as to appellant's physical condition and its cause: That following the operation on her right eye for the removal of a cataract, appellant still had a marked visual defect in that eye with correction to near normal vision only through the use of glasses; and that the vision in her left eye was practically nil, permitting only the perception of light, due to an immature cataract. With regard to appellant's right eye, the examining doctors for the city described appellant's vision in relation to the standard eye chart used for testing visual distances—20/400 without glasses, meaning that she could read the largest letter on the chart at a distance of 20 feet instead of the normal 400 feet, and 20/20-3 as corrected with glasses, meaning that in reading the letters on the chart at the standard distance of 20 feet, she missed three of the six or seven on the line.

The divergence of opinion in the medical testimony before the board centered on whether appellant's defective vision constituted an ailment which incapacitated her from performing her stenographic duties. Appellant was examined by three doctors on behalf of the city and their report was then reviewed by the city's health officer. With their attention di-

rected to the tasks of a stenographer as commonly understood, all four doctors, who were general practitioners, agreed that appellant's impaired vision precluded her from doing such work satisfactorily and that she was not, in their opinion, an acceptable employee for such rating in the city's service. In testing appellant's visual acuity, they relied principally on her ability to read distance charts accurately and without strain. They particularly noted the difficult adjustments for distance accommodation which would be required of a stenographer having vision in one eye instead of two, with the necessary change of vision from scanning shorthand notes to transcription on the typewriter and the doing of other things involving a shift of vision back and forth, inevitably resulting in general strain. They stated that such situation would be that much more aggravated in appellant's case where there was not only an absence of binocular vision but also a deficiency even in her one good eye.

■ Appellant cites the opposing medical testimony of eye specialists in her behalf indicating that despite her visual defects, she nevertheless could satisfactorily perform normal stenographic duties. However, this merely created a conflict in the record, and in reviewing the proceedings before the board the court was bound to disregard the evidence contrary to that received in support of the findings of the board. (*Nider* v. *City Com.*, 36 Cal.App.2d 14, 20 [97 P.2d 293]; *Nunes* v. *Board of Civil Service Comrs.*, 88 Cal.App.2d 632, 636 [199 P.2d 311]; *Fickeisen* v. *Civil Service Com.*, 98 Cal. App.2d 419, 421 [220 P.2d 605].) Appellant made no objection to the competency of the four doctors who testified at the board proceedings on behalf of the city. Their experience in the medical profession ranged from 12 to 50 years. ■ While they were general practitioners rather than eye specialists, this fact did not affect their competency but only went to the weight to be accorded their testimony. (Cases anno: 54 A.L.R. 860, 861.) ■ Manifestly, the qualification of the general practitioners to testify as expert witnesses concerning appellant's admitted visual defects and the effects of such defects on appellant's ability to satisfactorily perform her work had no relation to their familiarity with the standards of care required in the treatment of eye conditions. So distinguishable is the situation in *Huffman* v. *Lindquist*, 37 Cal.2d 465 [234 P.2d 34], where at page 476 it was declared that the trial court had not abused its discretion in sustaining an objection to the qualification of

an autopsy surgeon to "testify as an expert with regard to the *question of whether defendant doctor had exercised the proper and requisite degree of skill and care.*" (Emphasis added.)

Here the opinions of the four doctors in question rested on an undisputed statement of physical facts—not on erroneous assumptions (*Brant* v. *Retirement Board of San Francisco,* 57 Cal.App.2d 721, 733 [135 P.2d 396]); improper hypothetical factors (*Thoreau* v. *Industrial Acc. Com.,* 120 Cal.App. 67, 72-73 [7 P.2d 767]); a contradiction of the obvious laws of nature (*Hendricks* v. *Industrial Acc. Com.,* 25 Cal.App.2d 534, 537 [78 P.2d 189]); an inaccurate medical history of the case (*Blankenfeld* v. *Industrial Acc. Com.,* 36 Cal.App.2d 690, 697 [98 P.2d 584]); or weak evidentiary considerations (*Guardianship of Waite,* 14 Cal.2d 727, 731 [97 P.2d 238]). In visual specifications established for workmen's compensation cases the "loss of both eyes or the sight thereof" is "conclusively presumed" a permanent total disability (Lab. Code, § 4662), with a reduction in vision to 20/200 or less rated as complete loss of sight under the Industrial Accident Commission's authorized "schedule for the determination of the percentages of permanent disabilities" (Lab. Code, § 4660). Under the circumstances, the testimony of the general practitioners on the question of the effect of appellant's admittedly defective vision upon her capacity to do stenographic work was not without evidentiary weight. In accepting such testimony and rejecting the contrary opinions of the specialists, the board exercised its fact-finding powers in the determination of conflicting evidence. Accordingly, its decision that appellant's defective vision precluded her satisfactory performance of her stenographic duties and constituted ground for her dismissal from the service cannot be disturbed. (*Greif* v. *Dullea,* 66 Cal.App.2d 986, 1009 [153 P.2d 581].)

Appellant challenges the fairness of the proceedings before the board on the ground of alleged prejudice. The record is not entirely clear with respect to appellant's precise position as to wherein "personal bias and prejudice" on the part of the board or any particular members thereof affected the proceeding. At the board hearing appellant did raise the question of its authority to proceed with the dismissal charges as preferred by the board's chairman, an objection without merit, as above discussed. However, it does not appear that she then argued the distinctly separate issue of any prejudice

that might arise by reason of his sitting as a member of the board empowered to hear the charges. (§ 107; see *Nider* v. *Homan*, 32 Cal.App.2d 11, 13 [89 P.2d 136].) In the trial court appellant's counsel alluded to the possible impropriety of the chairman's hearing and resolving the evidence relating to the charges which he had preferred, but her counsel at the same time recognized that an "unusual situation" was involved in that appellant was an employee of the board which, according to the city charter, must determine the sufficiency of the "evidence . . . to warrant her dismissal." With this observation, appellant's counsel failed to press the objection further.

█ Now on this appeal appellant urges that the trial court erred in rejecting certain offers of evidence purportedly relating to prejudice on the part of the board. These offers of proof appear quite vague and it is not clear as to whom such proof was to be directed in relation to any claim of "fraud, malice or arbitrary conduct." (*Cf. Saks & Co.* v. *City of Beverly Hills*, 107 Cal.App.2d 260, 265 [237 P.2d 32].) The board consisted of five members, with four voting unanimously to sustain the dismissal charges and the other "having no familiarity with the proceedings, did not participate." Even were it to be conceded that the chairman should not have acted on the hearing of this matter, nevertheless a majority of the board, consisting of three participating members in addition to the chairman, unanimously approved the dismissal charges. Moreover, if it is appellant's position that the rejected evidence in the trial court would show the existence of prejudice on the part of some member of the board in the disposition of her case, the record fails to show that she made appropriate objection at the board hearing. (See *Nider* v. *Homan, supra*, 32 Cal.App.2d 11, 13.) It must be remembered that the board was confronted with a difficult situation involving an employee whose physical faculties were admittedly impaired and who apparently had been given every opportunity over a long period of time to seek relief from such impairment. It is natural that the members of the board should have gained some knowledge concerning appellant's condition as the result of previous dealings with the case and prior to the actual hearing of the dismissal charges. But still the board was the only body empowered to accord appellant a hearing on the dismissal charges (*English* v. *City of Long Beach, supra*, 35 Cal.2d 155, 158), and the necessities of the case would sustain the board's right to

act in determination of appellant's appeal. (42 Am.Jur. § 22, p. 312; *Caminetti* v. *Pacific Mutual L. Ins. Co.,* 22 Cal.2d 344, 366 [139 P.2d 908]; *Scannell* v. *Wolff,* 86 Cal.App.2d 489, 493 [195 P.2d 536].) In this state of the record, with appellant's position so uncertainly defined, it must be concluded that the court properly rejected her claim of prejudice in challenge of the board's authorized procedure.

■ It is true, as above noted, that the board made its first order of dismissal at the conclusion of a hearing at which neither appellant nor her counsel was present, but this order was set aside because of "apparent irregularities" in such procedure, notice to appellant and her counsel was given of the matter's restoration to the calendar, two further hearings were scheduled at which neither appellant nor her counsel appeared, and only then did the board again make its order approving the charges of dismissal against appellant. The board manifestly undertook to reconsider appellant's case so that she might have the opportunity to refute any evidence submitted at the previous hearings. (See *English* v. *City of Long Beach, supra,* 35 Cal.2d 155, 159-160.) Having failed to avail herself of such opportunity, appellant cannot now successfully urge the point here. (*Cf. Fascination, Inc.* v. *Hoover,* 39 Cal.2d 260, 264 [246 P.2d 656].)

■ Appellant also argues that the board acted arbitrarily in accepting the medical testimony which would sustain the findings of the city's health officer to the effect that appellant's defective vision prevented her satisfactory performance of stenographic duties. But as the opposing medical opinions have been reviewed, it was for the board, in the exercise of its adjudicatory functions, to determine the conflict and it cannot be said that its decision is "not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).)

■ Nor is there merit to appellant's challenge of the sufficiency of the evidence to support the trial court's finding that appellant was not, after September 7, 1949, ready, able and willing to perform stenographic duties in the classified service of the city·as the basis for her salary claims. Regardless of any civil service status attained by appellant under the city charter and in the absence of a grant of sick or vacation leave, appellant would not be entitled to a writ of mandate to compel the payment to her of compensation as an employable person unless she were able to perform the services required in the discharge of her assigned duties.

The court had before it the complete record of the proceedings before the board as well as direct testimony from appellant at the trial. The city's doctors, following their examination of appellant on September 8, 1949, reported her health to be "such as to make her unemployable pending correction of the visual defects," and in pursuance thereof the board by letter of September 15, 1949, denied appellant reemployment. However, her civil service status had not yet been terminated pending the service and filing of written charges of dismissal and the opportunity for a hearing before the board. (City Charter, §§ 106-107; *English* v. *City of Long Beach, supra,* 35 Cal.2d 155, 158.) For the purpose of clearing its records, the board in early April, 1950, unsuccessfully attempted by telephone to communicate with appellant. Having received a message of the board's inquiry for her, appellant by letter of April 17, 1950, notified the secretary of the board that she was "at present attending Long Beach City College, but [would] either telephone . . . or drop into the office in a day or two." The board's minutes of May 11, 1950, "the first meeting at which any discussion was held concerning proposed dismissal of" appellant, show that she had not up to that time "complied with her letter of April 17, 1950, in reporting to the office the condition of her eyes." Thereafter a notice of discharge and an amended notice were served on appellant and filed—May 15 and June 1, 1950, respectively—and after several hearings, as above noted, the board ordered her dismissal from the service. Appellant offered no explanation or excuse either at the board hearing or at the trial as to why she had failed to make the desired report to the board.

As appears further from the record before the board, appellant on February 17, 1950, enrolled in typing and shorthand classes at the city college. At the board hearing appellant stated her purpose in taking such instruction was for review and to "prepare" herself so as to "be capable of performing the duties of a stenographer." In response to the question of whether appellant appeared to have any difficulty with her vision, her shorthand instructor testified: "Not so far as the letters were concerned—they were mailable, and they were judged fair work whether they had to be returned to be rewritten or whether they were mailable when first turned in." In addition on this point of appellant's ability to resume her stenographic duties, the court had the medical

testimony before the board and that body's finding as to her unemployable status. There is no contention that appellant's vision had in anywise changed from the condition existing at the time of her medical examination and her dismissal from the city service—20/20-3 vision in her right eye as corrected with glasses and practically no vision in her left eye.

In her testimony at the trial as at the board hearing, appellant maintained that she was at all times ready, able and willing to resume her stenographic duties as of September, 1949, and she cites various parts of the record favorable to her position. But again that merely presents a conflict in the evidence for the trial court's consideration. As had so often been said, questions as to the weight and sufficiency of the evidence, the construction to be put upon it, the inferences to be drawn therefrom, the credibility of witnesses commensurate with their conduct and manner of testifying, and the determination of conflicts and inconsistencies in their testimony are matters for the trial court to resolve. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 223-224 [209 P.2d 387, 11 A.L.R.2d 835].) The court was not bound to accept appellant's evidence or her conclusion as to her readiness, ability and willingness to perform satisfactory stenographic work in the city's service as of September 7, 1949, and its contrary finding based on substantial evidence is final and conclusive on appeal. (*Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 184 [168 P.2d 946].) Under the circumstances, appellant was not entitled to compensation from the mentioned date, and the parties' arguments as to the effective date of her discharge need not be here considered.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I concur.

I agree that this case presents, primarily, a question concerning conflicting evidence and that the resolution of that conflict was a matter for the trier of fact whose determination must be upheld on appeal if there is substantial evidence in support thereof, and that there is here sufficient evidence to support that determination. This is a well established rule in our jurisprudence and one which I firmly believe should be followed although a majority of this court has not always seen fit to do so, preferring, instead, oftentimes to reweigh

the evidence and make its own determination. (See, among others: *Rodabaugh* v. *Tekus,* 39 Cal.2d 290 [246 P.2d 663]; *Hawaiian Pineapple Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 656 [255 P.2d 431]; *Better Food Mkts.* v. *American Dist. Teleg. Co.,* 40 Cal.2d 179 [253 P.2d 10]; *Atkinson* v. *Pacific Fire Extinguisher Co.,* 40 Cal.2d 192 [253 P.2d 18]; *Sutter Butte Canal Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 139 [251 P.2d 975]; *Mercer-Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 102 [251 P.2d 955]; *Gill* v. *Hearst Publishing Co.,* 40 Cal.2d 224 [253 P.2d 441]; *Goodman* v. *Harris,* 40 Cal.2d 254 [253 P.2d 447]; *Pirkle* v. *Oakdale Union etc. School Dist.,* 40 Cal.2d 207 [253 P.2d 1]; *Burtis* v. *Universal Pictures Co., Inc.,* 40 Cal.2d 823 [256 P.2d 933]; *Kurlan* v. *Columbia Broadcasting System,* 40 Cal.2d 799 [256 P.2d 962]; *Weitzenkorn* v. *Lesser,* 40 Cal.2d 778 [256 P.2d 947]; *Turner* v. *Mellon, ante,* p. 45 [257 P.2d 15]; *Barrett* v. *City of Claremont, ante,* p. 70 [256 P.2d 977].)

It is my opinion that the rule here announced with reference to the medical testimony is inconsistent with that announced in *Huffman* v. *Lindquist,* 37 Cal.2d 465, 476 [234 P.2d 34]. We are here concerned with a malady of the eyes. The majority says "Appellant made no objection to the competency of the four doctors who testified at the board proceedings on behalf of the city. Their experience in the medical profession ranged from 12 to 50 years. While they were general practitioners rather than eye specialists, this fact did not affect their competency but only went to the weight to be accorded their testimony. (Cases anno: 54 A.L.R. 860, 861.) Manifestly, the qualification of the general practitioners to testify as expert witnesses concerning appellant's admitted visual defects and the effect of such defects on appellant's ability to satisfactorily perform her work had no relation to their familiarity with the standards of care required in the treatment of eye conditions." In the Huffman case, a majority of this court said: "A medical expert is not qualified as a witness unless it is shown that he is familiar with the standards required of physicians under similar circumstances." (*Huffman* v. *Lindquist,* 37 Cal.2d 465, 478 [234 P.2d 34].) A majority of this court now seek to distinguish the Huffman case by stating that it was there declared that the trial court had not abused its discretion in sustaining an objection to the qualification of an autopsy surgeon to "testify as an expert with regard to the question of whether defendant doctor had exercised the proper and

requisite degree of skill and care.'' As I understand it, no question was raised concerning the treatment of eye conditions; the question centers upon appellant's ability to do her work with her limited eyesight. Surely, the standards applied by eye specialists in making such a determination would be a major factor in determining the competency of expert witnesses and so it was said in the Huffman case: *"A medical expert is not qualified as a witness unless it is shown that he is familiar with the standards required of physicians under similar circumstances."* (Emphasis added.) The majority makes no attempt to distinguish this holding in the Huffman case from its contrary holding here. Certainly the eyes are considered in the medical profession as a matter for specialization. The loss of vision, or percentage of loss, is within the specialized medical field of eye, ear, nose and throat diseases and maladies. But the majority here holds that in accepting the testimony of the general practitioners ''and rejecting the contrary opinions of the specialists, the board exercised its fact-finding powers in the determination of conflicting evidence.'' Inasmuch as appellant made no objection to the general practitioners testifying as experts in an expert's field, probably that statement is correct. However, the statement in the majority opinion here to the effect that the familiarity of the general practitioners with the standards of care required of specialists had no relation to their qualification as expert witnesses is most certainly not in accord with the statement made in the majority opinion in *Huffman* v. *Lindquist, supra,* 37 Cal.2d 465. Of course, the holding in the Huffman case barred plaintiff from recovering and the holding here, although in conflict with Huffman, does the same thing.

SCHAUER, J.—It is my view that the findings of the local board are not supported ''by substantial evidence in the light of the whole record'' (Code Civ. Proc., § 1094.5, subd. (c)), that petitioner was not legally discharged, and that consequently she retains her civil service status and the right to receive salary until such time as she resigns or a legal discharge is effected.

For further discussion, which to me appears adequate and impelling to the conclusions reached, reference is made to the opinion of the District Court of Appeal (reported at 250 P.2d 312, 319-323), authored by Justice Vallée and concurred in by Presiding Justice Shinn and Justice Wood

(Parker). For the reasons therein and hereinabove stated I would reverse the judgment with directions as stated by the District Court of Appeal.

Appellant's petition for a rehearing was denied July 28, 1953.