[Civ. No. 21772.  Second Dist., Div. Three.  Feb. 20, 1957.]

COMPANIA HARINERA DE LA BAJA CALIFORNIA, SOCIEDAD ANONIMA (a Corporation), Appellant, v. WESTERN BELTING AND EQUIPMENT COMPANY (a Corporation) et al., Respondents.

Arthur E. Briggs and Charles E. McGinnis for Appellant.

Robert M. Holstein for Respondents.

WOOD (Parker), J.—Action for damages for breach of contract and for fraud. In a previous trial judgment was for plaintiff. A new trial was granted upon the motions of plaintiff and defendants. In the second trial the case was submitted, pursuant to stipulation, upon the reporter's transcript of the previous trial, and upon the depositions and exhibits on file. Plaintiff appeals from judgment in favor of defendants.

Appellant contends that certain findings are not supported by the evidence.

Defendant Western Belting and Equipment Company is a California corporation, having its principal place of business in Los Angeles. It will be referred to as Western. Defendant Bice is president of Western.

Plaintiff is a Mexico corporation. A flour mill which was operated by plaintiff in Mexicali was destroyed by fire in August, 1944.

On November 29, 1944, Messrs. Curiel, Mendez, Ramos and Garcia, representatives of plaintiff, and Mr. Villasenor, a representative of Western in "Lower Mexico," went to the office of Western in Los Angeles and conferred with Mr. Dutson, secretary of Western, regarding the purchase by plaintiff of machinery and equipment for a new flour mill

to be constructed in Mexicali. At that conference the plaintiff and Western entered into a written agreement which is as follows:

"November 29, 1944

"Cia Harinera De La Baja California, S. A.
  Altamirano No. 498
  Mexicali, B. Calif., Mexico

"Gentlemen:

"Pursuant to your conversation with Mr. J. A. Villasenor, our representative in Lower Mexico, we are pleased to accept your order for the following list of material:

[The list which is omitted here consisted of 25 items describing machinery and equipment, including 4 flour mill units.]

"All of the above material at a net price of $40,510.55. This price includes the engineering cost for your flour mill.

"The above price covers all new material, and where-ever possible, we shall attempt to furnish and secure good, workable second-hand equipment, in which event any saving effected will be passed along to you.

"All material is f.o.b. factory, and upon receipt of a deposit of $15,000 we will proceed immediately with the purchase of this material. The balance of material is to be paid for as it is delivered f.o.b. cars.

"We thank you for the opportunity of furnishing this material to you and await your further pleasures in this regard.

Yours very truly,

WESTERN BELTING & EQUIPMENT Co.

E. A.Dutson
E. A. Dutson, Sec'y

E. T. Greenberg
E. T. Greenberg, V.P.

Accepted:

| Ignacio Ramos | Manuel Curiel |
| Pablo Mendez | Antonio Garcia |

Nov. 29, 1944.

P. S.   A 15% commission will be added to any equipment that we sell to you.

Accepted

Ignacio Ramos            Manuel Curiel
Pablo Mendez            Antonio Garcia"

On December 5, 1944, plaintiff paid $15,000 to Western as the deposit required by the agreement.

Western supplied plans, specifications, and services of engineers for the new mill building, which building was completed in April, 1945. In the latter part of June, 1945, Western made the first delivery of machinery and equipment to plaintiff. Thereafter Western made further deliveries to plaintiff, and by November 5, 1945, the substantial part of the machinery and equipment had been delivered. On that date the undelivered material, which was to be delivered for $929.48, consisted of such articles as a drier, cleaner, sewing machine head, bearings and pulleys. Those articles were delivered in November and December, 1946, and in the early part of 1947. It thus appears that Western completed the principal part of its contract about a year after the contract was made; and that delivery of the few remaining articles was completed about a year thereafter.

Plaintiff paid additional amounts as follows: $6,000 on July 6, 1945; $6,000 on September 21, 1945; and $7,500 by deposit, on September 20, 1945, in a Mexicali bank to the credit of Western. The total payment by plaintiff, as of November 5, 1945, was $34,500. (As of said date, $929.48 remained on deposit in the bank to be used in paying for the undelivered articles above mentioned.) It thus appears that when Western had substantially completed the contract on November 5, 1945, plaintiff had paid $33,570.52 to Western and had left $929.48 on deposit to pay the balance of $34,500.

The total amount to be paid under the contract, according to Western, was $34,500—the amount which plaintiff had paid, that is, $33,750.52 and $929.48 left on deposit. (Letters from Western to plaintiff, dated September 21 and November 2, 1945, which will be hereinafter referred to, indicate that $34,500 was the agreed price.)

Plaintiff's claim for damages for breach of contract is based upon the alleged failure of Western to perform the contract within the time provided in the contract. It is to be noted that in the written contract of November 29, 1944, the time for performance is not stated. Plaintiff asserts that according to conversations at the time of making the written contract the contract was to be performed in time for plaintiff to mill the 1945 wheat crop. Plaintiff's claim for damages for fraud is based upon alleged fraudulent representations of Western that Western would perform its contract in time for plaintiff to mill the 1945 wheat crop. It may be stated

generally that the findings of the court were contrary to plaintiff's allegations with respect to breach of contract and fraud.

■■■ The court found, among other things, that on November 29, 1944, plaintiff and Western entered into a written agreement for the purchase and sale of machinery, equipment, and engineering services for a price not to exceed $40,510.55; no time for delivery was specified in the agreement; due to shortage of merchandise because of war conditions, and the uncertainty of delivery dates occasioned thereby, which conditions were known to plaintiff, the parties understood and agreed that Western would proceed immediately with the purchase of the merchandise and that it would be delivered by Western within a reasonable time; pursuant to the agreement the merchandise and engineering services were delivered by Western and accepted by plaintiff within a reasonable time, and Western performed all of its obligations concerning the delivery of said machinery, equipment, and engineering services; Western did not agree to deliver said machinery, equipment, and engineering services in time for plaintiff to mill wheat harvested prior to June 1, 1945 (the "1945 wheat crop" was harvested in May); Western did not induce plaintiff to enter into the agreement by fraudulently representing that Western would perform the agreement in time to enable plaintiff to mill the wheat crop harvested in 1945; nor did Western induce plaintiff to enter into the agreement by making any fraudulent representations to plaintiff.

Appellant contends that the findings, just referred to, are not supported by the evidence. The argument of appellant is that the evidence established that Western represented through its agent, Mr. Villasenor, that it would deliver the machinery in time for plaintiff to mill the 1945 wheat crop; the oral representations of Villasenor were a part of the "written agreement" by reason of the words of Western in the written agreement, as follows: "Pursuant to your conversation with Mr. J. A. Villasenor, our representative in Lower Mexico"; the evidence is overwhelming that Villasenor promised delivery of the machinery in time for using it in milling the 1945 wheat crop. In support of that argument, appellant quotes from the testimony of its own witnesses. On appeal, the evidence is to be viewed in the light favorable to the respondents. Mr. Dutson, a witness called by respondents, testified that, at the conversation on November 29, 1944,

at Western's office, he told Villasenor and the representatives of plaintiff (Curiel, Ramos and Mendez) that on account of the war Western could not guarantee delivery on any amount of equipment. That was substantial evidence that a definite time of delivery was not agreed upon. As above shown, no time of delivery was stated in the written agreement. The weight and sufficiency of the evidence, the inferences to be drawn therefrom, the credibility of the witnesses and the determination of inconsistencies in their testimony are matters for determination of the trial judge. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387].) The trial court was not bound to accept the testimony of appellant's witnesses. (*Thompson* v. *City of Long Beach*, 41 Cal.2d 235, 246 [259 P.2d 649].) Furthermore, testimony of appellant's witnesses Curiel and Ramos at the trial, regarding time of delivery of machinery, was inconsistent with their testimony by deposition. Appellant's witness, Mr. Curiel, testified at the trial that Mr. Dutson said (in the conversation at his office) that the machinery would be delivered immediately. He (Curiel) testified in his deposition that Mr. Dutson said (in the conversation at his office) that everything would be delivered not later than April 1, 1945, so that plaintiff would be ready to mill the forthcoming crop. Appellant's witness, Mr. Ramos, testified at the trial that Mr. Dutson said (in the conversation at his office) that Western had two units "ready to be given to" plaintiff, and that the rest of the machinery would be delivered to be installed and ready for the 1945 harvest. He testified in his deposition that Mr. Dutson said that Western would deliver two machines by May "because Cia Harinera must start buying wheat during the month of May, 1945." Also, testimony of appellant's witness, Mr. Garcia, regarding time of delivery, was inconsistent with the testimony of appellant's witnesses Curiel and Ramos. Appellant's witness, Mr. Garcia, testified at the trial that Mr. Dutson said that if plaintiff would pay a certain amount of money, he would guarantee to have the machinery ready so plaintiff "could start in doing that milling." It thus appears that not only was the testimony of Curiel and Ramos at the trial inconsistent with their testimony in their depositions, but that the testimony of each of the witnesses, Curiel, Ramos and Garcia, was inconsistent with the testimony of each other. The above-mentioned findings to the effect that Western did not agree to deliver the machinery in time to mill the 1945 wheat crop, and that Western did not fraudulently induce

plaintiff to enter into the agreement, are supported by substantial evidence.

Appellant contends that another finding is not supported by the evidence. That finding is to the effect that plaintiff agreed to pay and Western agreed to accept $34,500 in full payment for the machinery, equipment and engineering services; that plaintiff paid $33,570.52 and left on deposit in the Mexicali bank $929.48, and thereby plaintiff paid the full agreed price to Western. The agreement of November 29, 1944, provided that the price of $40,510.55 covered all new material, and that Western would attempt to furnish good secondhand equipment, and if it delivered used equipment the saving would be "passed" to plaintiff. The four mill units were rebuilt or secondhand. Mr. Bice, president of Western, testified that two or three of the other machines were used machines; that he and Mr. Dutson (secretary of Western) met with the officers of plaintiff in Calexico in September, 1945, and discussed settlement of the final agreed price on the contract. About September 20, 1945, plaintiff deposited $7,500 in a Mexicali bank to the account of Western, which deposit was represented by credit slips Numbers 2213 and 221305. On September 21, 1945, two letters which were addressed to plaintiff were signed by Bice, representing Western, and by Curiel and Mendez, representing plaintiff.

One of the letters stated, as follows:

"In accordance with the agreement made today with your Mr. Manuel Curiel and Senor Pablo Mendez, we are permitted to draw against the money deposited for our account in the Banco Del Pacifico S. A., as per letter of September 20, 1945, and their credit receipt in our favor (Nos. 2213 and 221305) of September 20, 1945, upon delivery at Calexico of the following equipment as it arrives—or in other words, payment will be made on partial shipments of the following equipment which will complete all of the material purchased from us, and which will complete the original contract dated November 19, 1944:

[List omitted]

"The above being agreeable to us we hereby accept in representation of the Cia Harinera De La Baja California."

The other letter stated, as follows:

"In accordance with our conversation and agreement of today, you agree to notify the Banco Del Pacifico S. A., that

they are to release the $7500.00 which was deposited to our account on Credit Slip #2213 and 221305, against partial shipments, which invoice will be submitted as partial shipments are made.''

At the end of that letter, under the word ''Accepted,'' Curiel and Mendez signed their names.

Thereafter Western delivered additional machinery to plaintiff. About November 2, 1945, Western sent a letter to plaintiff, stating as follows:

''Supplementing our letter of September 21, 1945, the balance still to be delivered on the list of material shown in that letter is as follows:

[List omitted]

''All of the above will be furnished for a total of $929.48, which is the balance due us on the deposit of $7500.00 that was placed to our credit in the Banco del Pacifico on September 20, 1945, on their credit receipt #2213 and #221305. This balance is what is still on deposit after our draft of September 28, 1945, in the amount of $1570.52, and our draft of October 24, 1945, in the amount of $5000.00 has been paid.

''When these deliveries are completed, it will complete our contract in full as originally signed by all parties dated November 19, 1944.''

The two drafts referred to in the letter of November 2 were paid on November 5, 1945. The $929.48, referred to in the letter, is still on deposit in the bank. ■ The said three letters constituted substantial evidence that Western and plaintiff agreed, on September 21, 1945, as to the remainder of equipment to be delivered to complete the contract, and as to the remainder to be paid by plaintiff on the contract price, namely, $7,500. Plaintiff had theretofore paid $27,000. The total of the payments and the deposit was $34,500. The finding to the effect that the final agreed price was $34,500 is supported by substantial evidence.

■ Appellant contends that another finding is not supported by the evidence. That finding is to the effect that plaintiff did not rely upon any alleged false representations ''concerning the prices set forth in any invoices,'' so as to be induced to pay to Western more than ''the agreed price.'' Appellant argues that certain invoices showed charges for rebuilt mills exceeding the list price for new mills; and there were other overcharges in the invoices. It does appear that the price stated in Western's invoice for the four rebuilt mills was in excess of the manufacturer's price. The evi-

dence shows that in the spring of 1945 plaintiff knew the manufacturer's price, and that all the payments made by plaintiff, other than the original payment of $15,000, were made in the summer and fall of 1945—after plaintiff knew the manufacturer's price. Mr. Bice testified that the invoices did not represent the actual price to plaintiff; that the purpose of the invoices was to get the merchandise across the border. The total of the invoices was $39,944.39. As above stated, the final agreed price was $34,500. There was no evidence that plaintiff paid more than said agreed price. The finding to the effect that plaintiff was not induced by alleged fraudulent invoices to pay more than the agreed price is supported by substantial evidence.

Appellant contends that a finding, pertaining to commission paid to Villasenor, is irreconcilable with other findings and the judgment. That finding was to the effect that the parties agreed that Villasenor was to be paid 15 per cent of the contract price of the machinery and equipment for his commission; and that pursuant to the agreement Western paid him 15 per cent of the contract price of the merchandise and engineering services, or $5,175. Appellant argues to the effect that according to the contract the commission was to be paid on the cost of machinery and equipment; that according to the finding the commission was paid also on engineering costs and on the commission itself; that if the finding is correct, Western wrongfully took part of the commission from plaintiff. The original contract price was $40,510.55, less any saving effected by obtaining secondhand equipment. There was no evidence that the $34,500, which Western agreed to accept and plaintiff agreed to pay, was based on individual invoices or items. This contention is not sustainable.

Appellant contends that the court erred in failing to make a finding on the issue as to whether O. P. A. prices for secondhand machinery and equipment were controlling in the action. Appellant states in its brief: "This is not an action to recover penalties provided for in the O. P. A. Rules and Regulations, but plaintiff-appellant maintains that a reasonable price could not exceed maximum O. P. A. prices." As above stated, the parties agreed upon the price. Under such circumstances, the court was not required to determine the reasonable value.

Appellant contends that the court erred in failing to release to plaintiff the $929.48 which is on deposit in the

Mexicali bank. Western filed a counterclaim for $629.48. (Apparently, the counterclaim was for $629.48, instead of $929.48, for the reason that when the sewing machine head was delivered in the early part of 1947 appellant paid $300 for it.) Western dismissed the counterclaim for the reason (as stated in respondents' brief) that the money on deposit in Mexico was uncollectible. Appellant argues that since Western dismissed its counterclaim, the money on deposit should have been released to appellant. In the present action for damages, the matter as to the release of the money was not an issue. The court did not err in failing to order the release of money on deposit in Mexico.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.