[Civ. No. 787.   Fifth Dist.   Oct. 3, 1967.]

GLENN FERGUSON et al., Plaintiffs and Appellants, v. KERN COUNTY WATER AGENCY et al., Defendants and Respondents.

Borton, Petrini, Conron & Brown, George A. Brown, Pillsbury, Madison & Sutro and Noble K. Gregory for Plaintiffs and Appellants.

Kronick, Moskovitz & Vanderlaan, Adolph Moskovitz and Rex R. Mull for Defendants and Respondents.

CONLEY, P. J.—Kern County Water Agency was established by an act of the Legislature in 1961 (Stats. 1961, ch. 1003, p. 2651; West's Ann. Water Code App. 1959 Supp., 1966 Cum. Pocket Part, p. 89 [Deering's Wat. Code, Uncodified Acts, Act 9098.]); by its terms the Agency in extent covered the entire area of the county.

The Agency was created to enable it to acquire a supplemental water supply for its member units; the act prescribed the powers and duties of the Agency, and provided in detail for its organization, operation and management; authorized the acquisition of property to carry out the purposes of the Agency; authorized the incurrence of indebtedness; pro-

vided for the issuance of bonds and for the levy and collection of taxes and the payment of any indebtedness contracted by it, including general agency expenses, as well as cooperating in satisfying contracts with any other entity. By vote of the electors within the area of the Agency its formation was approved.

After its creation, the Agency contracted with the State Department of Water Resources for the purchase of Feather River water to be delivered by means of the California Aqueduct now under construction. In connection with the total plan for the delivery to the southern part of the state of water originating in the northern area of California, the department set prices which, in the long run, would permit it to recover its full cost of delivering the water to contracting parties (see *Metropolitan Water Dist.* v. *Marquardt,* 59 Cal.2d 159, 183-184 [28 Cal.Rptr. 724, 379 P.2d 28]); the contract with the Kern County Water Agency accordingly requires it to buy water at the full cost to the department. Upon receiving the water, the Agency will deliver various amounts thereof to member units, such as water districts, within Kern County which have executed contracts with the Agency. It is foreseen that the Agency will incur substantial deficits; the Agency intends to raise the amounts of money constituting these deficits through assessments authorized and levied pursuant to section 14.2 of the act.

On July 13, September 9 and 10, and October 12, 21 and 22, 1964, the Agency held a public hearing pursuant to the requirements of section 14.2 of the act for the purpose of making an assessment under that section for the fiscal year 1965-1966. Appellants participated in that hearing and, *inter alia*, protested the proposal to levy the assessment on what they called the basis of value rather than benefit.

On November 17, 1964, the board adopted resolution No. 51 which levied an assessment for the fiscal year 1965-1966 on an ad valorem basis on all of the taxable property within a single portion of Kern County designated as Zone of Benefit No. 1. The area comprises substantially all of the San Joaquin Valley portion of Kern County excepting certain water districts being served by the federally created Friant-Kern Canal project and the North Kern Water Storage District.

Appellants also protested this method of assessment at the hearing before the Board of Supervisors of Kern County under section 7.3 of the act on the ground that it was erro-

neously based on the value of, rather than the benefit received by, the taxable property. On December 15, 1964, the board of supervisors rejected this protest and approved the Agency action.

The appellants are property owners within the district, acting throughout in their own interest as well as in behalf of organizations to which they belong which join them in challenging the questioned actions of the board of directors. They appeal from an adverse judgment which decisively and completely rejected their attack on the validity of resolution No. 51, which had been unanimously adopted by the directors; it created a single zone of benefit constituting substantially the entire territory of the Agency, and levied an ad valorem assessment on all taxable property within the zone for the fiscal year 1965-1966.

The action of the board was taken pursuant to the authority granted by section 14.2 of the Kern County Water Agency Act, which reads as follows: "Sec. 14.2. For the purpose of making payments pursuant to contracts entered into by the agency with the United States or the State, in accordance with the provisions of this act, the agency, in addition to the revenues and taxes otherwise provided for in this act, may make assessments apportioned in accordance with the benefits and, for this purpose, may establish zones of benefit which reflect the degree of benefit resulting to each zone from such contract or contracts. In the ascertainment of the benefits derived through such contract or contracts, and in establishing zones of benefit, there shall be taken into account the following:

"(a) Improvement in the underground water supply.

"(b) The contribution to the underground water supply by water made available independently of the agency.

"(c) The adequacy of the water supply made available independently of the agency.

"(d) The prospective need for a water supply.

"(e) Extractions from the underground water supply in excess of contributions.

"(f) The economic impact resulting from the water supply made available under such contract or contracts; provided, that areas not receiving a surface water supply or an improvement in the underground water supply by reason of such contract or contracts shall not be assessed pursuant to this subsection (f) of Section 14.2.

"No assessment shall be levied under this Section 14.2 unless the board by resolution declares that it intends to do so and that a public hearing will be held thereon at a specified day, hour and place where all interested persons may appear and be heard. This resolution shall be published in the agency pursuant to Section 6063 of the Government Code in a newspaper of general circulation in the agency. The hearing may be adjourned from time to time at the discretion of the board and at its conclusion the board shall declare the zones of benefit established, if any, and the assessment, if any, to be levied hereunder. Assessments made within zones of benefit pursuant to this Section 14.2 shall be levied on all taxable property within such zone of benefit on an ad valorem basis."

The suit was filed under section 1094.5 of the Code of Civil Procedure, seeking administrative mandamus to set aside the action of the board of directors and asking that a new assessment be levied based on appellants' construction of section 14.2 of the act. The judgment of the trial court determined that the Kern County Water Agency was validly created; that the members of the board of directors were not biased or disqualified to act in passing resolution No. 51 but were legally authorized so to act; that petitioners were given a full and fair hearing; that the discretion of the board was not abused; that the board did not act in excess of its jurisdiction; that resolution No. 51 is authorized by section 14.2 of the Kern County Water Agency Act and was supported by substantial evidence; that the resolution complies with the requirements of section 14.2 of the act; that the creation of a single zone of benefit and the levy of the assessment were approved by the Board of Supervisors of Kern County by its resolution No. 64-505 adopted December 15, 1964, and that said resolution of adoption complies with the requirements of section 7.3 of the Agency Act; and finally, that a writ of mandate should be. and was, denied.

A reading of section 14.2 of the Kern County Water Agency Act makes clear that the board of directors for the purpose of raising money to make payments on contracts entered into by the Agency with the United States or the state "may establish zones of benefit which reflect the degree of benefit resulting to each zone from such contract or contracts." It is quite apparent that the section gives jurisdiction to the board of directors to create zones of benefit under

the conditions specified and that the board is also directed in such circumstances to ascertain the benefits derived through such a contract as is here involved, also to take into account some six circumstances specifically enumerated. One would think from a simple reading of the provision that the technique in ascertaining these zones of benefit refers to the benefits between or among several geographical areas and not to the benefit of the persons who own property of a given kind within all or a part of the zones. Once the board of directors has selected the zone or zones of benefit, after a hearing duly noticed by the board, and a second or confirmatory hearing by the board of supervisors of the county, the act specifically prescribes that assessments "shall be levied on all taxable property within such zones of benefit on an ad valorem basis."

Numerous points, largely restricted to procedural questions, were urged by appellants during the hearing below, but most of them have been abandoned on the appeal in favor of basic and under-lying objections to the board's finding of a single zone of benefit and the admitted failure of the board to ascertain benefits to the individual property owners as applied throughout the agency area or within the zone of benefit delineated by the board. The appellants maintain that section 14.2 of the Act requires an assessment of benefits as applied to various classes of property owners in the entire Agency or at least within each zone of benefit which is segregated and set up by the board of directors; it is contended that, instead of making a detailed inquiry as to benefits, the board did not even attempt to measure benefits to the individuals involved, as they say the act requires; furthermore, it is contended that the benefits to various individuals, or classes of property owners, differ markedly and that the present holding of the board of directors that the inquiry as to benefits applies only to a comparison of zones of benefit rather than to the individual property owners throughout the Agency is a misreading of the requirements of section 14.2 of the act; instead of the determination of geographical zones of benefit, the petitioners and appellants maintain that the act requires these zones to constitute rather the lumping together in single categories of landowners the following: (1) Urban property, (2) Irrigated rural property, (3) Unirrigated rural property, and (4) Oil and gas mineral property interests. Appellants further say that the

testimony of Dr. Houston contained in his detailed report denominated ''Economic Factors in Kern County Water Agency Policies'' shows that the principal, if not the only, benefit to be derived by these various classes of property would be the increase in market value which would accrue by reason of the importation and use of the additional water from the Feather River.

Our first duty on this appeal is to determine whether or not the ''zone'' or ''zones'' referred to in section 14.2 of the act connote geographical areas or an aggregation of the same types of property scattered over the entire agency area.

Do the zones required in section 14.2 of the act refer to geographic areas or to widely separated property interests of identical kind found throughout the agency? The word ''zone'' as used in the Act in its only applicable meaning is defined as follows: ''. . . a region or area set off or characterized as distinct from surrounding or adjoining parts. . . .'' (Webster's Third New International Dictionary.)

Something of the derivation and original connotation of the word is thus expressed in 101 Corpus Juris Secundum at page 649:

''In its original significance, the word 'zone' means belt, and it also means a district, and as the word is used in general or in its literary sense, it means a belt or girdle more or less symmetrical in outline.''

The common-sense conclusion as to what ''zones of benefit'' means is further supported by the contents of the report of the Assembly Interim Committee on Water, entitled ''Study of Water District Laws'' (26 Assembly Interim Committee Report No. 5 (1961-1963), pp. 103-104) which contains the following: ''A number of different terms are used to describe zones or subdistricts within general or special act districts.''

''These zones are variously referred to as 'zones,' 'benefit zones,' 'improvement districts,' or 'distribution districts.' They are merely *geographic areas* which have various powers to levy ad valorem assessments, issue one or more types of bonds, and construct works.'' (Italics added.)

It appears from the report that there are 44 specially enacted water districts and agencies in the state, and 6 water districts dependent upon general legislative acts, all of which have the power to establish zones. All of these enactments containing the word zone, including the Kern County Water

Agency Act, quite certainly refer thereby to a geographic area.

The contention in various forms made by the appellants to the effect that the zones of benefit required by the act are not geographic but are made up of similar parcels of land scattered over the entire area of the Agency illustrates that ingenious advocates sometimes, in good faith, take unjustified liberties with the established connotations of words in our language.

During the extensive hearing held by the Agency pursuant to section 14.2, much evidence was introduced pro and con by writings and by oral testimony. As part of the written evidence, an extensive report was made by Walter G. Schultz of Leeds, Hill & Jewett, Incorporated, a firm of consulting engineers. There is also a similarly comprehensive consideration of the economic effect of the state water project on the Agency entitled ''The Economic Impact of the State Water Project on the Kern County Water Agency Service Area,'' prepared under the direction of an experienced economic expert, G. Herbert Holley. Both reports favor the view reached by the directors; they show prolonged research, and a careful consideration of the factors involved. Conclusions were drawn relative to the benefits arising from the water supply factors covered by the contract between the State of California and the Agency, the improvement in the underground water supply, the adequacy of water made available independently of the Agency, the prospective need for an additional water supply, the extractions from the underground waters in excess of the contributions, and the requisites for a zone or zones of benefit; Mr. Schultz stated that it was not feasible to determine varying degrees of benefit for multiple areas involved until such time as the following specified elements shall become better known through experience:

(1) The areas that contract with the Agency and those that do not contract for an imported water supply;

(2) The amount of contracted water and the build-up in use of this water by each of the contracting member units;

(3) The actual and potential use of ground water by areas that do not contract for water;

(4) The effect on ground water levels of the actual importation of water to Kern County.

Mr. Schultz concluded that after consideration of all the water supply factors listed in section 14.2 of the Kern County Water Agency Act, the map included in the report was prepared as a single proposed zone; it was recommended that all of the territory be put in one zone of benefit.

Mr. Holley found that the economic impact on the Agency service area of water deliveries from the state should be considered under three main categories; that the first had to do with changes in the magnitude of "basic economic indicators," as population, employment, farm production and others; that a second category concerned increases in tax collections which would result from increases in assessed valuation as a result of the water deliveries; and that a third impact would be the continuation in strength of a vitally important economic segment—a "strong-growing, healthy agricultural base for the area's economy." Mr. Holley stated that sizable benefits to the entire economy of the county as well as to agriculture generally would result from the importation of state water.

The two experts each determined that no difference in degree of benefits, at least sufficient to require different zones, existed for the year 1965-1966. The propriety of the Agency's action in passing resolution No. 51 is substantiated by the evidence accepted by the board of directors.

The board found in resolution No. 51, paragraph 1, subparagraph (g), that: "The benefits to be realized during the 1965-66 fiscal year are of a community-wide nature that flow to the entire zone of benefit hereinafter described as a result of the water supply contract between the agency and the State, and said entire zone of benefit will receive during the fiscal year 1965-66 substantially the same degree of such community-wide benefit."

In *Thompson* v. *City of Long Beach,* 41 Cal.2d 235, 241 [259 P.2d 649], it is said: ". . . in reviewing the proceedings before the board the court was bound to disregard the evidence contrary to that received in support of the findings of the board."

It is true that there was conflicting evidence through the report of the Stanford Research Institute under the guidance and synthesis of Neil T. Houston. A close reading of this report would indicate, however, that in Dr. Houston's opinion the law should have been differently worded with respect to zones of benefit and assessments, rather than that

the present law was not followed by the board of directors. In any event, the trial court was bound to inquire whether or not there was substantial evidence to support the judgment as rendered. And if this court were to find, as we do, that there was, in fact, substantial evidence to support the conclusion of the board with respect to resolution No. 51, it would be our duty to affirm the judgment of the trial court.

It seems apparent to us, from a simple, common-sense reading of section 14.2 of the act that it was the duty of the board of directors to ascertain whether there should be created one or more zones of benefit after excluding certain territory for the reasons specified in section 14.2 of the Act, and that in creating such geographical zone or zones of benefit, the board was required to consider whether or not the benefit to the taxpayers as a group in the whole, or in different parts, of the territory was different. Here, preliminarily, there was the elimination of a portion of the lands contained in the Agency by reason of the fact that the board was required to do so by section 14.2 of the act; all parts of the remaining property which constitute Zone of Benefit No. 1 received, in the opinion of the board, the same degree of benefit from the existence of the state contract for the year 1965-1966. There was ample evidence of a substantial nature to support these determinations of the board.

If different parts of Zone of Benefit No. 1 had been different in essentials, it would have been the duty of the board to create a corresponding number of zones of benefit. But, as the board considered, pursuant to substantial evidence, that the degree of benefit with respect to all of the property included within the Zone of Benefit No. 1 was the same. it was its duty to form a single zone of benefit for that year.

The ad valorem tax applicable to all taxable property within the zone of benefit was specifically provided by the terms of section 14.2 of the act; that was a fixed decision of the Legislature, and not of the directors.

The action of the Board of Directors of Kern County Water Agency in passing resolution No. 51 is sustained by the record. (*Thompson* v. *City of Long Beach, supra,* 41 Cal.2d 235; *Fascination, Inc.* v. *Hoover,* 39 Cal.2d 260 [246 P.2d 656]; *Walker* v. *City of San Gabriel,* 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383]; *Sultan Turkish Bath, Inc.* v. *Board of Police Comrs.,* 169 Cal.App.2d 188 [337 P.2d 203];

California Administrative Mandamus, Scope of Review (Cont. Ed. Bar), § 5.66, p. 75, § 5.75, p. 89.)

The judgment is affirmed.

STONE, J.—I concur, but in doing so I wish to point out that the water project was in a preliminary stage of development when the 1965-1966 assessment was made on the basis of a single district and no property was directly benefited during that period. Evidence before the board that the intangible benefits derived from the fact the project was under construction inured to the entire district is sufficient to support the creation of a single zone for tax purposes. In future years this may not be true and, since the creation of "zones of benefit" occurs annually, there is nothing to preclude a distinction in the future between various areas of the district according to the benefits as defined in the act.

The authorities cited in the opinion to support the conclusion that the term "zone" as used in the act means "geographical area" seem to be conclusive on this point. It is true, as appellants point out, that if the criteria for determining benefits as delineated· by the statute are applied geographically, an injustice results to some property owners. For example, in an agricultural area the owner of farm property would probably benefit under all of the criteria, while an owner of oil and gas rights might not benefit at all. Indeed, an increase in underground water might make it more difficult to produce oil and gas. This disparity of benefits within the area "zone" is of statutory origin and any remedy must be through legislative action.

Gargano, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied October 30, 1967. Gargano, J., did not participate therein. Appellants' petition for a hearing by the Supreme Court was denied November 30, 1967.