[Civ. No. 6307.   Fourth Dist.   Nov. 21, 1960.]

EDWARD PRANGER, Appellant, v. S. WESLEY BREAK
et al., Respondents.

Lewis Garrett and Lionel Richman for Appellant.

Stanford D. Herlick, County Counsel, and Margaret J. Morris, Deputy County Counsel, for Respondents.

GRIFFIN, P. J.—Petitioner and appellant Edward Pranger, a civil service employee, sought a writ of mandate in the superior court against respondents S. Wesley Break and members of the Board of Supervisors acting as ex officio members of the Air Pollution Control Board of San Bernardino County (hereinafter referred to as APCB) and members of the Civil Service Commission, seeking a judicial review of the administrative adjudication by the Civil Service Commission under Government Code section 11523, which commission sustained the dismissal of appellant upon grounds of "conduct unbecoming an employee" upon certain specified grounds. The trial court upheld the action of the Civil Service Commission and denied the writ. The appeal is from this judgment.

There is no material dispute as to the facts. The case was tried in the superior court predicated on the joint pretrial conference statement and order and exhibits listed therein. Accordingly, the parties agreed, and the pretrial order indicates, that the petitioner, an employee of the APCB in the capacity of Clerk IV, was discharged from such position as of August 29, 1958. The dismissal was accomplished by means of a letter dated August 20, 1958, addressed to petitioner over the signature of the Air Pollution Control Officer, and it is conceded that the power of appointment and discharge was exclusively within the jurisdiction of such officer. This communication stated that the dismissal of petitioner was "upon direction" and order of the board of the Air Pollution Control District and such action was taken "pursuant to section 11 of Civil Service Ordinance 805." The letter further states that the dismissal was "based upon conduct unbecoming an employee as exemplified by your actions at a Rialto City Council meeting and your editorial comments. . . ." Petitioner is specifically charged by the terms of this written notice of editorially espousing a philosophy "inimical to public service" and with the use of "abusive language with respect to" a newspaper publisher and reporter at a meeting of the Rialto City Council.

Under date of August 19, 1958 (the day preceding the date of the letter of dismissal), the chairman of the Board of Supervisors of San Bernardino County, acting on behalf of the board, had addressed a letter to petitioner which purported to dismiss him from his position. The reasons assigned in this letter were substantially the same as those set forth in the letter of August 20. It is conceded that this letter was ineffectual, since the board of supervisors, acting either in that capacity or as ex officio APCB, lacked any jurisdiction or power to appoint or discharge subordinate employees of the Air Pollution Control District. Apparently appellant appealed to the Civil Service Commission from the order of dismissal. A lengthy hearing was had and it filed written findings on December 30, 1958, and determined (a) that the dismissal of petitioner was legally effected, and (b) that the conduct of petitioner "as exemplified by his editorial comments . . . demonstrated a lack of the essential loyalty, mature judgment, and the proper spirit of cooperation so vital to good government in this County," and constituted "cause for dismissal pursuant to the rules of the Civil Service Commission of the County of San Bernardino." It should be noted

that the commission made no specific findings with respect to charges contained in the letter of dismissal concerning petitioner's alleged conduct in appearing before the Rialto City Council, but elected to base its order on the conduct exemplified by editorial comments as authorized by petitioner and published in the County Union Employees' News Letter.

Appellant, as associate editor of that paper, which is published monthly and circulated among the county employees, wrote an editorial, in the absence of and without the consent of the chief editor, the membership or executive committee, referring to the claimed failure of the board of supervisors to increase wages of county employees to meet the claimed cost of living rise. He wrote in part:

"When the monthly accounting time inevitably rolls around, we know that we are orphans in a spiralling economic tornado. Are we in the San Bernardino County employ some sort of weird exception to recognized standards of decent living in our locale? . . . We are fish swimming in the same economic sea as dwells the entire Southern California populace. With one exception. The majority of us have been relegated, through the Board's indifference, to play the role of *bottom fish.*

"For the first budgetary time in recent years, our Board of Supervisors has lent a deaf ear to the economic facts of life when it comes to the needs of the employees who administer the government they supposedly supervise. Our Union has appealed to them with supplication, mild agitation, and arbitration in an effort to nudge them from their 'ostrichized' head-in-the-sand attitude of 'hold the line'—to no avail.

"Is there an immediate, or even long range remedy to this situation? Perhaps, but the medicine is bitter. It calls for varied applications of lawsuit, slowdown, sitdown, walkout— or that final, bitter dose—the strike. Whatever antidote is prescribed, it can only be attained through the media of strong Unionism."

After the article appeared, the president of Local 122 accepted appellant's resignation as associate editor. The executive board, by resolution, disclaimed and disapproved the remarks concerning "slowdown, sitdown, walkout or strike . . . which remarks were not authorized by the local and do not express its policies."

As to the Rialto City Council meeting, the transcript of evidence before the Civil Service Commission which involved the municipal policy in relation to the continuation in office

of the city manager, appellant, a property owner, attended. There was a large audience present and many people, including appellant, actively and vociferously participated in the discussions. Public remarks attributable to appellant were there made, such as "Let's throw him out of office" and "Get back on your horse and buggy and get on your route." In referring to the publishing plant of a local newspaper, he was said to have publicly remarked that it, or the reporter, was a "journalistic prostitute" or "literary prostitute." The local paper, the following day, carried the headlines and story that appellant Pranger, "County Assistant Air Pollution Control Director" or "assistant Air Pollution officer in the county," who apparently was known to many of the audience as such, publicly accused the reporter of the local newspaper of "prostituting the newspaper profession."

As to the publicity in reference to the claimed threatened strike and sit-down, appellant argues that his remarks were merely expressions of opinion in his capacity as associate editor of the News Letter; that the constitutional right of free speech protects his privilege in publicly expressing such opinions, subject only to the restrictions imposed upon public employees to refrain from statements which would induce or incite other employees to engage in illegal or improper activities to the detriment of the public agency; that the effect of his editorial statements must be measured by the "clear and present danger" rule; and that the record is wholly devoid of evidence to sustain findings of conduct unbecoming a public employee. (Citing such authority as *Near* v. *Minnesota*, 283 U.S. 697 [51 S.Ct. 625, 75 L.Ed. 1357]; *Bridges* v. *California*, 314 U.S. 252, 261 [62 S.Ct. 190, 86 L.Ed. 192, 159 A.L.R. 1346]; *Baumgartner* v. *United States*, 322 U.S. 665 [64 S.Ct. 1240, 88 L.Ed. 1525]; Cal. Const., art. I, § 9; *Board of Education* v. *Swan*, 41 Cal.2d 546 [261 P.2d 261].)

The issue is not the right of freedom of speech, whether petitioner had the right to make such editorial statements, or whether such statements were of the nature which presented a clear and present danger, but the real issue is whether the publication of the statement, under the circumstances and in view of petitioner's position as a public employee in a sensitive governmental office, was, *ipso facto*, conduct unbecoming a public employee. This question is fairly well treated in *Hayman* v. *City of Los Angeles*, 17 Cal.App.2d 674, 679 [62 P.2d 1047] (hearing denied by the Supreme Court) where it is said:

"The right which is involved here is not that which petitioner thinks has been denied him, but is the right of respondents to exercise a reasonable supervision over city employees, to the end that proper discipline may be maintained and that activities among employees be not allowed to disrupt or impair the public service. Such is not only the right but the duty of the city and its several departments. In the exercise of this duty, they must be allowed a wide discretion and their acts are not subject to review by the courts until they have reached the point of illegality. . . . If petitioner's activities had a tendency to create dissension and unrest among the city employees and to interfere with the enforcement of reasonable rules of conduct prescribed by the Board of Public Works, it is not for the courts to declare that a dismissal based upon these facts would be without cause and therefore without authority under the charter of the city."

This portion of the Hayman decision has been cited with approval in a number of cases in this state since the rule itself was announced. See *Board of Education* v. *Swan, supra,* 41 Cal.2d 546, which appears to answer petitioner's claim that the dismissal was based upon an invasion of his right of free speech. It is there stated, at page 556:

"Nor can defendant prevail in her claim that affirmance of her dismissal infringes upon the constitutional guarantee of her freedom of speech, in that she thereby is denied the right to criticize her superiors upon pain of losing her position. [Citations.] One employed in public service does not have a constitutional right to such employment and is subject to reasonable supervision and restriction by the authorized governmental body or officer to the end that proper discipline may be maintained, and that activities among the employees may not be allowed to disrupt or impair the public service. [Citations.] Because of this dominant public interest, the exercise of such control over the public employee is not only a right but is a duty, and in the discharge thereof a wide discretion is allowed, which will not be disturbed until the point of illegality is reached." See also the dissenting opinion in *La Prade* v. *Department of Water & Power,* 27 Cal.2d 47, 54 [162 P.2d 13].

■ In the absence of legislative authority, public employees in general have no right to strike against the government. (*City of Los Angeles* v. *Los Angeles etc. Council,* 94 Cal.App.2d 36 [210 P.2d 305]; *Newmarker* v. *Regents of the University of Calif.,* 160 Cal.App.2d 640 [325 P.2d 558]; *Los Angeles Metropolitan Transit Authority* v. *Brotherhood*

*of Railroad Trainmen,* 54 Cal.2d 684, 687 [8 Cal.Rptr. 1, 355 P.2d 905].)

While appellant subsequently denied that he intended to call for a strike, or sit-down, it is clear from the record that the Union News Letter editorial could reasonably be interpreted, and was so interpreted by some, as an approval of the strike or other unlawful pressures to remedy the situation described in the editorial. The publication of such sentiments could reasonably be found to engender distrust in the public mind as to the loyalty and integrity of public officers and employees generally. There is no vested property right in public employment beyond the right to have statutory procedure for dismissal followed. (*Redding* v. *City of Los Angeles,* 81 Cal.App.2d 888 [185 P.2d 430] ; *Boyd* v. *Pendegast,* 57 Cal.App. 504 [207 P. 713].) The reasons for appellant's dismissal were set forth with sufficient certainty. It is not necessary that every act specified in the charges be proved. The action should be upheld if there is sufficient evidence from the whole record to support the findings. (*Turner* v. *Civil Service Com.,* 119 Cal.App.2d 640 [259 P.2d 698].)

The "clear and present danger" doctrine has no application to activities of public employees where the sanctions imposed are suspension or dismissal from the public service. (*Hayman* v. *City of Los Angeles, supra,* 17 Cal.App. 2d 674.) The cases cited by appellant were not applying the "clear and present danger" doctrine to set aside a dismissal of a public employee. There is no suggestion in them that the public agency must withhold action unless there is immediate danger of other employees joining in an overt act against the governmental entity involved. In the absence of some provisions giving tenure, an officer or employee may be removed at will. (*Hackler* v. *Ward,* 105 Cal.App.2d 615 [234 P.2d 170].) It is only by virtue of the civil service ordinance and rules adopted pursuant thereto that appellant had any right of tenure. Rule 8, section 2(f) thereof provides as a cause for removal "that the employee has been guilty of any conduct unbecoming an officer or employee of the County." Therefore, the limit of the right to such employment is the cause stated in the rule adopted pursuant to the ordinance giving the right, and not the limit of constitutional rights guaranteed to individuals generally. While appellant had the same constitutional right to freedom of speech and press without restraint by governmental authority as persons generally, as a public employee he could be held accountable

if such action constituted conduct unbecoming a public employee. The commission's finding that appellant's conduct was unbecoming a county employee is supported by substantial evidence. No abuse of discretion by the administrative agency appears.

As to the alleged statements made at the public hearing before the Rialto City Council, the Civil Service Commission did not make a direct finding on the charge. In view of the conclusions reached on the other charge, such finding is not necessary to support the commission's decision on the general charge of conduct unbecoming a public employee. (*Turner* v. *Civil Service Com.*, *supra*, 119 Cal.App.2d 640; *Thompson* v. *City of Long Beach*, 41 Cal.2d 235 [259 P.2d 649] ; Code Civ. Proc., § 1094.5.) There can be no denial of the right of petitioner to participate in the public discussion during the council meeting. Neither the temperate or intemperate nature of his remarks, the wisdom or folly of the cause he advocated, nor the validity of his personal criticism or approval of the individual council members, are at issue in these proceedings. There is substantial evidence that the acts and conduct of petitioner were prominently publicized by the local newspaper which referred to him as ''County Assistant Air Pollution Control Director'' or ''assistant Air Pollution officer in the county.'' The inference which the Commission undoubtedly deduced was that the news value of the event must have been measured in part by the fact that petitioner was a public official. It is clear that such publicity described the public agency involved. This circumstance alone emphasizes the need for constant vigilance on the part of any public employee to avoid, in his private concerns, and in the conduct of his own business as a citizen, that type of conduct which may be the cause of direct criticism of the public agency by whom he is employed.

The remaining point is that appellant was not discharged by the person legally authorized to discharge him. Health and Safety Code, section 24228, provides that the Air Pollution Control Board shall appoint the Air Pollution Control Officer. The Air Pollution Control Officer in turn shall appoint all of his assistants. In the first instance, the board of control attempted to dismiss appellant. Jurisdiction of the board to do so was submitted to the Superior Court of San Bernardino County in an independent action to determine this question and that court held that the authority to dismiss was solely vested in the Air Pollution Control Officer.

Apparently there was some difference of opinion between the board and the control officer as to whether appellant should be dismissed. However, thereafter a letter was signed by the control officer stating that upon direction of the board he was ordered to notify appellant of his dismissal and he did thereby notify him of his dismissal; that this action was taken pursuant to section 11 of Civil Service Ordinance 805 and was based upon conduct unbecoming an employee as above indicated. It was signed "George R. Bean, Air Pollution Control Officer." Shortly thereafter, Bean resigned his position. The argument appears to be that this notice was ineffective because his dismissal was in fact made by the board and was not the free and voluntary act of Bean, the control officer. His action in writing and signing the letter of dismissal may have been the result of pressures brought to bear upon him, but his concurrent resignation as Air Pollution Control Officer (apparently prompted by his disagreement with the board as to the advisability of discharging petitioner) supports the inference that he exercised his own personal judgment in the choice between compliance and noncompliance with the orders and directions of the board. In any event the letter of dismissal is unequivocal in stating that "I . . . do hereby notify you of your dismissal . . . ." The Civil Service Commission considered this factual question and found that the dismissal was legally effected; that the act of dismissal was accomplished by the person having sole jurisdiction and authority to discharge petitioner as a civil service employee; and that his election to comply with directions or orders of the board does not alter or diminish the legal effect of his actions. The trial court also made similar findings. ▮ It has been held that the action of the removing officer is no less his act because performed at the direction of the governing body. (*Brown* v. *Board of Police Commissioners,* 2 Cal.App.2d 245 [37 P.2d 737]; *Christie* v. *Lueth,* 265 Wis. 326 [61 N.W.2d 338].) ▮ It is the general rule in reference to the review of administrative proceedings under Code of Civil Procedure, section 1094.5, that every presumption in favor of the administrative findings which may ordinarily be accorded to such determinations of the trier of fact should be indulged to support the administrative findings on these factual matters. ▮ Up to the point where the court cannot, in good conscience, say that the administrative evidence supporting those findings and inferences of fact is substantial, in that there is no reasonable relation between the

facts and the findings, the court should not substitute its judgment for that of the agency, even though, had the court heard the case de novo it would not have reached the same findings of fact itself. (See Netterville, *Administrative "Questions of Law" and the scope of Judicial Review* (1956) 29 So.Cal.L.Rev. 434, 465; *Thompson* v. *City of Long Beach,* 41 Cal.2d 235 [259 P.2d 649].) Our conclusion is that the finding of the commission and the trial court had sufficient evidentiary support. No abuse of discretion appears.

Judgment affirmed.

Shepard, J., and McMurray, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 18, 1961. Traynor, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.